[No. 184-40962-3.   Division Three.   November 18, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. ALBERT S. HUFF, *Appellant.*

*Edward John Crowley, Jr.,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* for respondent.

MUNSON, J.—Defendant appeals from a conviction for the crime of second-degree murder.

At approximately 9 p.m. on October 18, 1968, defendant, Albert S. Huff, was enjoying a short repast at the bar of the Silver Club Tavern in downtown Spokane, Washington. He was a neat, clean, quiet man, minding his own business. Shortly after 9 p.m. the deceased, Daniel Pattie, entered the Silver Club. He was 6 feet ½ inch in height, weighing between 250 and 275 pounds, and earlier in his lifetime was a professional fighter. Pattie, immediately on entering the tavern, walked behind Huff, grabbed Huff in a bear hug, and shook him violently. There is no evidence these men had known each other previously or that they ever had any disagreements. Pattie put Huff back on the stool and walked to the rest room at the rear of the tavern. On his exit he spoke to several patrons at the end of the bar; on his return, he walked back to Huff and again violently shook him. There is no apparent reason for Pattie's conduct. Pattie seated himself next to Huff and ordered a beer. Suddenly he reached over, grabbed Huff's watch off his wrist breaking the band, and placed it upon the bar. Huff complained to the bartender who indicated he did not approve of this type of conduct. The bartender then proceeded to the rear of the tavern to serve beer to his patrons. His mission was interrupted, however, by the sound of gunfire. He looked back and saw Huff off his stool, near some booths across from the bar firing a pistol at Pattie. Huff shot Pattie six times. Pattie died almost instantly. Huff returned to the bar, placed the gun thereon, and requested the bartender to call the police.

There is a void in the evidence as to any movement or comment by either Huff or Pattie from the time the bartender started to the rear of the tavern until the shooting began. The entire occurrence from Pattie's entry into the

tavern until he lay dead upon the floor did not take more than 20 minutes.

Huff was charged and convicted of murder in the second degree. On this appeal he is represented by the same counsel appointed to represent him at trial.

Defendant raises three evidentiary questions on appeal.

First, are specific acts of violence by the deceased, which occurred at a different tavern with a third party minutes before the first encounter with defendant, but which were unknown to defendant, admissible to show the specific state of mind of the deceased when he "assaulted" defendant?

We acknowledge the distinction posited by defendant, *i.e.*, the use of specific acts of violence by the deceased, communicated to defendant, to show *defendant's state of mind,* as opposed to acts of violence by the deceased, not communicated to defendant, to show the *deceased's state of mind.*[1] However, the facts of the present case do not warrant the application of the latter rule. As was observed by the Supreme Court in *State v. Churchill,* 52 Wash. 210, 216, 100 P. 309 (1909):

> The evidence shows that, on the day of the homicide, the deceased was drinking. The court gave the appellant wide latitude in presenting evidence to the effect that at such times he was generally reputed to be violent and dangerous. It does not go to the point as to who was the aggressor, because in this respect the evidence of the state and that of the defendant are in harmony. The entire evidence shows, as we have said, that the deceased was the aggressor. The real issue was whether at the time the appellant fired the fatal shot he had reasonable ground to believe that he was either in actual or apparent danger of death or great bodily harm.

While the facts in *Churchill* are not identical with the present case, both resolve themselves to the identical ultimate issue set forth in the last sentence of the above quotation. Although there is no dispute in the evidence presented

---

[1]Compare *State v. Moore,* 182 Wash. 111, 45 P.2d 605 (1935) and *State v. Adamo,* 120 Wash. 268, 207 P. 7 (1922) with *State v. Beird,* 118 Iowa 474, 92 N.W. 694 (1902); 1 F. Wharton, Criminal Evidence § 228 (12th ed. 1955); 1 J. Wigmore, Evidence §§ 63, 198 (3d ed. 1940).

by either party concerning the deceased's aggressive actions toward defendant when the former first entered the tavern, there is no testimony as to the location of the parties at the moment of the shooting and what hostile movement, if any, the deceased made towards defendant.[2] Defendant, exercising his constitutional right, did not take the stand. This void in the evidence cannot be filled by the jury's speculation as to defendant's possible acts based on his prior encounters that evening. Therefore, the rule defendant seeks to impose is not applicable.

The aforementioned void in the evidence necessary to complete defendant's theory of self-defense, gives rise to the second issue—whether the trial court erred in rejecting defendant's offer of proof pertaining to the testimony of a police officer who participated in interrogating defendant and obtaining a recorded statement from him.

When the police arrived at the tavern, defendant was questioned by the officers. He was subsequently transported to the police station and, while en route, was again questioned but by different officers. Upon arriving at the station he was taken to an interrogation room where, at approximately 11 p.m., he made a formal statement to officers different than those actively involved in the previous interrogations.[3] The statement was recorded and subsequently transcribed. It was this statement defendant attempted to introduce as evidence.[4] Defendant's statement

---

[2]The trial court allowed defendant to show by three witnesses the general reputation of the deceased for violence when drinking, as was the case the evening in question.

[3]Officer Sheppard was present at the tavern during the time defendant was interrogated by other police officers, but did not participate in the interrogation, or testify as to any statements made by defendant. Officer Sheppard was present in the room at the police station while the formal statement of defendant was being taken.

[4]The trial court refused defendant's attempt to cross-examine a state's witness concerning this statement since it had not been testified to on direct examination. Likewise, the court refused defendant's request to introduce the statement as part of his case on the basis it was too far removed from the time of the incident, as well as being self-serving. The statement in toto is before this court via defendant's offer of proof.

consists of an admission to having shot the deceased but goes further and explains, in self-serving terms, the reason why. Officers from the first two groups testified as to statements made by defendant at the tavern and en route to the police station, but no evidence concerning the formal statement was introduced by the state.

▮ Out-of-court admissions by a party, although hearsay, may be admissible against the party if they are relevant. 5 R. Meisenholder, Wash. Prac. § 421 *et seq.* (1965); C. McCormick, Evidence § 239 (1954). However, if an out-of-court admission by a party is self-serving, in the sense that it tends to aid his case, and is offered for the truth of the matter asserted, then such statement is not admissible under the admission exception to the hearsay rule. *State v. King,* 71 Wn.2d 573, 577, 429 P.2d 914 (1967); *State v. Johnson,* 60 Wn.2d 21, 31, 371 P.2d 611 (1962); 5 R. Meisenholder, Wash. Prac. § 381 at 380 (1965).

The net effect of defendant's attempt to introduce the out-of-court, self-serving statement is to place defendant's version of the facts before the jury without subjecting the maker thereof, defendant, to cross-examination. To do so would deprive the state of the benefit of testing the credibility of the statements and thereby deny to the jury an objective basis for weighing the probative value. Statements from two texts are illustrative of the reasoning behind the inadmissibility of such statements.

> Manifestly it would be unsafe if, without restriction, parties to litigation were allowed to support their claims by proving their own statements made out of court. Such a practice would be open not only to all the objections which exist against the admission of hearsay in general, but would also open the door to fraud and to the fabrication of testimony.

(Footnote omitted.) 2 B. Jones, The Law of Evidence § 335 at 632 (5th ed. S. Gard 1958).

> If there has been an interval for taking advice, or fabricating a story, or preparing a narrative, or incidents intervene which change the [defendant's] mental condition, or introduce a new motive, the statements cannot be

used [under the rule allowing declarations included in res gestae]. They would then be self-serving declarations, . . .

(Footnotes omitted.) 1 H. Underhill, Criminal Evidence § 275 at 692-3 (5th ed. P. Herrick 1956).

Declarations which are commonly called self-serving cannot be given in evidence in favor of the accused unless they are part of the res gestae.

(Footnote omitted.) 1 H. Underhill, Criminal Evidence § 277 at 695 (5th ed. P. Herrick 1956).

Consequently, the trial court was correct in sustaining the objection to defendant's offer of proof.

Defendant maintains that all his statements were taken during one continuous interrogation, hence admissible under the rule requiring admission of an entire conversation if a part thereof is introduced. We do not believe that rule is applicable in this case. Here there were different conversations with different officers on separate occasions, and no part of the formal statement was placed in evidence. *State v. Johnson, supra.* However, were a case to arise where the law officers were "platooning" the interrogation of a defendant for the purpose of using only derogatory statements, while excluding exculpatory ones, we would closely scrutinize such behavior. We find no evidence of such an attempt here. This assignment of error is without merit.

Defendant's third issue goes to the propriety of a hypothetical question asked, and answered by, one of the autopsy surgeons. We find no error in either the question or the answer.

Judgment affirmed.

EVANS, C. J., and GREEN, J., concur.

Petition for rehearing denied January 8, 1971.

Review denied by Supreme Court June 9, 1971.