[No. 29172-3-III. Division Three. December 22, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. ALEKSANDR V. PAVLIK, *Appellant*.

646

*Paul J. Wasson II*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey* and *Andrew J. Metts III, Deputies*, for respondent.

¶1 KORSMO, A.C.J. — Aleksandr Pavlik challenges his conviction for first degree assault, arguing that the trial court erred by excluding his spontaneous statement to police. While it is unclear that the trial court erred, it is

quite clear that the alleged error was harmless. The conviction is affirmed.

## FACTS

¶2 The participants agree on the general outline of the incident, although their views vary in some particular details. Mr. Pavlik was driving in Spokane southbound on Perry Street near the Avista facilities in order to reach Hamilton Street and enter the freeway. It was nearly 1:00 a.m. on May 19, 2008. He came upon two bicyclists, Gabriel Leenders and Brad Smith, riding abreast in the street and swerved to avoid them. Angry words were exchanged between Mr. Smith and Mr. Pavlik. While the cyclists denied it, Mr. Pavlik contended that they struck his car with something as he drove away.

¶3 Mr. Pavlik stopped in the left turn lane on Perry at the traffic light on Mission Avenue. He opened his trunk and pulled out a gun.[1] While the bicyclists were still a block away, he fired a "warning" shot in their general direction. Mr. Leenders yelled words similar to "[i]f that is a gun, you'd better kill me or I'm going to kill you." Report of Proceedings (RP) at 84-85. When the cyclists continued coming toward him, Mr. Pavlik drove east on Mission Avenue, away from Hamilton Street. He stopped at a gas station about six blocks away. Believing that the police had probably been summoned because of the gunshot, he decided to return to the area and await their arrival.

¶4 He drove back on Mission Avenue and turned at Perry Street into a parking lot located on the northeast corner of Spokane's Mission Park. There he found Leenders and Smith smoking cigarettes. Pavlik parked about five feet from them; his window was open.

¶5 Mr. Leenders approached and saw a gun sitting on the seat beside Mr. Pavlik. He reached through the window

---

[1] Mr. Pavlik testified that he had the gun in his pocket the entire time, but since he opened up the trunk it would appear to others that he acquired the gun there. Report of Proceedings at 359, 376.

for it and a struggle ensued. Mr. Leenders testified that he went for the gun to prevent being shot at again, while Mr. Pavlik testified that Mr. Leenders assaulted him. After being struck four times while keeping Leenders from the gun, Pavlik reached for it and shot Leenders "in a non-fatal area" to avoid being killed. RP at 385.

¶6 Officer Stephen Arredondo of the Spokane Police Department was stopped in his patrol car awaiting the traffic light at Mission and Perry. He witnessed the altercation and shooting, and immediately reached the scene. Mr. Pavlik yelled to him, "You saw it, it was self-defense." RP at 11. A number of other officers and emergency aid personnel arrived shortly thereafter. Mr. Pavlik told two of the other officers, "You saw him punch me in the face. I shot in self-defense." *Id.* Upon being interviewed later that morning, Mr. Pavlik told an investigating detective, "I was just defending myself. An officer saw me getting punched." RP at 12.

¶7 Mr. Leenders survived with serious injuries. The prosecutor filed charges of attempted first degree murder and first degree assault; both crimes were alleged to have been committed while armed with a firearm. The prosecutor moved in limine to exclude testimony relating to Mr. Pavlik's three noted statements to the officers concerning self-defense as "self-serving hearsay."

¶8 The trial court heard the motion pretrial. The prosecutor argued that because the statements were self-serving and hearsay, they should not be admitted. Defense counsel argued that the first statement was admissible under either the excited utterance or as state of mind exceptions to the hearsay rule. Counsel argued that the two subsequent statements were not hearsay because they were not being offered to prove the truth of the statements, but only to show that he was cooperative with the police. RP at 26-27. The trial court ruled that his cooperation could be established without use of the statements. RP at 27.

¶9 Turning to the initial statement to Officer Arredondo, the trial court made the following observations:

In this instance I believe that it was a statement made, obviously I believe it because there's nothing contrary to that at the time of the event. It was spontaneous. It certainly is self-serving. There was some time in the defendant's mind about this event. This event occurred over a period of time where the bicycle rider and the vehicle became involved in an altercation of some sort, physical or otherwise. It continued over a period of distance and time, culminating in the final confrontation where the bicycle rider allegedly went up to the window and started thumping the defendant, who had a gun and previously had fired the gun at another point in time in another location. So the spontaneity of the statement is there but the spontaneity of the event, there's a lot of things going through this individual's mind and that may have been his belief about the legal conclusion, but it is a self-serving statement. It's also a legal conclusion. It's a different kind of a legal conclusion, however, because I think the public generally thinks in terms of self-defense outside—I mean it's a very common term that individuals are aware of without fully understanding the legal criteria to determine whether it truly is or isn't. I have concerns.

My reading of the law is that the self-serving quality of that statement under these circumstances is something that takes it outside of its admissibility and that the excited utterance or state of mind, I don't believe it's truly a state of mind. The statement was more a conclusion of why he shot but it wasn't his state of mind. He didn't say I was afraid, I was being beaten, I thought I was going to be hurt, killed or maimed. That state of mind would have been a little different. Here that isn't what was said. What was said is it was self-defense. I think that's obviously self-serving. I don't believe that the other hearsay exceptions would trump it and therefore I'm granting the motion.

RP at 34-36.

¶10 The case proceeded to jury trial. Mr. Pavlik testified that he fired both shots in order to protect himself from being beaten or killed. Over defense objection, the trial

650

court gave a first aggressor instruction to the jury. Defense counsel argued the case on the theory that the State had presented inconsistent testimony[2] and that her client had acted in self-defense to prevent being harmed with his own gun.

¶11 The jury acquitted on the attempted murder count but convicted on the assault charge. It also found that Mr. Pavlik had been armed with a firearm. After rejecting motions to set aside the verdict, the trial court imposed a mitigated exceptional sentence, including firearm enhancement, of 125 months.

¶12 Mr. Pavlik then timely appealed to this court. He was permitted to remain out of custody on bond pending the appeal.

## ANALYSIS

¶13 Mr. Pavlik challenges the decisions to exclude his "self-serving hearsay" statements and to give the first aggressor instruction. We will address each argument in turn; the latter issue will be discussed in the unpublished portion of this opinion.

### Defendant's Statements

¶14 Mr. Pavlik argues that his statements were admissible hearsay and that the trial court erred by excluding them. We agree that there is no "self-serving hearsay" rule that bars admission of statements that would otherwise satisfy a hearsay rule exception. However, the exclusion of his initial statement to Officer Arredondo was at worst harmless error.

 ¶15 A trial court's decisions to admit or exclude evidence are entitled to great deference and will be overturned only for manifest abuse of discretion. *State v.*

---

[2] There was evidence that both Mr. Smith and Mr. Leenders had been drinking. Hospital tests showed that Mr. Leenders had a .14 blood alcohol level. RP at 272.

*Luvene*, 127 Wn.2d 690, 706-707, 903 P.2d 960 (1995). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

██ ¶16 A party cannot change theories of admissibility on appeal. *State v. Kwan Fai Mak*, 105 Wn.2d 692, 718-719, 718 P.2d 407 (1986), *overruled on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). That doctrine is fatal to Mr. Pavlik's argument on appeal that his other statements also were admissible as excited utterances. He told the trial court that they were not hearsay and cannot now say that in actuality the statements were admissible under exceptions to the hearsay rule. *Id.*

██ ¶17 The only remaining statement for our review is the first statement to Officer Arredondo. The prosecutor argues that the statement was not admissible because it was self-serving hearsay, citing to *State v. Finch*, 137 Wn.2d 792, 824-825, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999). The problem with this argument is that there is no "self-serving hearsay" rule that excludes otherwise admissible evidence. A brief history review is in order.

¶18 Washington adopted its version of the Rules of Evidence effective April 2, 1979. *See* 91 Wn.2d at 1117. Among those original provisions was ER 801(d)(2), which stated then, in relevant part, as it currently states:

> **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—
>
> . . . .
>
> (2) *Admission by Party-Opponent.* The statement is offered against a party and is (i) [the party's] own statement.

*See* 91 Wn.2d at 1162. The comment to the rule included this paragraph:

> Subsection (d)(2) differs from previous Washington law more in theory than in practice. Previous decisions have considered admissions by party-opponents to be hearsay, but have admit-

ted them as an exception to the hearsay rule. Meisenholder § 421. Rule 801 continues to admit the statements, not as an exception to the hearsay rule, but by excluding them from the definition of hearsay altogether.

*Id.* at 1163.[3]

¶19 As the comment noted, Washington law prior to the adoption of the Rules of Evidence treated out-of-court statements as hearsay, but an admission could be used against the party who made it. Professor Meisenholder described Washington's approach:

> Washington decisions are compatible with the common theory that verbal admissions of a party to a suit are hearsay but still admissible against the party for their truth if they are relevant. . . .
>
> The Washington cases are also consistent with the notion that admissions are statements of a party (or one in some sort of privity with him) which are inconsistent with the party's position on the issues at the trial.

5 ROBERT MEISENHOLDER, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 421, at 414 (1965).

¶20 This rule was of relatively easy application in practice since a statement offered against the declarant would generally be against the declarant's interest, while an attempt by the declarant to enter his own statement would not be against his or her interest. *E.g., Langer v. Auto Interurban Co.*, 28 Wn.2d 343, 345-346, 183 P.2d 188 (1947) (statements made by defendant's bus driver were self-serving and not an admission); *State v. Haga*, 8 Wn. App. 481, 494-495, 507 P.2d 159, *review denied*, 82 Wn.2d 1006 (1973) (defendant could not admit his exculpatory statement to police). *Haga* noted that the law in the area had been nicely summarized in *State v. Huff*, 3 Wn. App. 632, 636, 477 P.2d 22 (1970), *review denied*, 79 Wn.2d 1004 (1971):

---

[3] The comments to the Rules of Evidence were not "adopted by the Court, but [were] included herein at the Court's direction." 91 Wn.2d at 1117.

"Out-of-court admissions by a party, although hearsay, may be admissible against the party if they are relevant. 5 R. Meisenholder, Wash. Prac. § 421 *et seq.* (1965); C. McCormick, Evidence § 239 (1954). However, if an out-of-court admission by a party is self-serving, and in the sense that it tends to aid his case, and is offered for the truth of the matter asserted, then such statement is not admissible under the admission exception to the hearsay rule. *State v. King*, 71 Wn.2d 573, 577, 429 P.2d 914 (1967); *State v. Johnson*, 60 Wn.2d 21, 31, 371 P.2d 611 (1962); 5 R. Meisenholder, Wash. Prac. § 381 at 380 (1965)."

*Haga*, 8 Wn. App. at 495 (quoting *Huff*, 3 Wn. App. at 636).

¶21 It is in this historical context that the statement from *Finch* relied upon by the prosecutor must be understood. *Finch* cited the same passage from *Haga* quoted above. *Haga* and *Huff*, and the authorities they cite, all predate the Rules of Evidence. Unfortunately, although *Finch* was decided well after the Rules of Evidence were adopted, it cited the prerule authority. The prosecution reads this statement as if it created a "self-serving hearsay" bar to the admission of a party's out-of-court statements. We do not. Instead, since the result under the modern rules is the same as at common law—a party's statements could be offered against him, but the party could not offer his own statements on his own behalf—we believe that *Finch* was doing nothing more than using the thoughtful *Huff* shorthand summary of the state of the law.[4] If the court had intended to add a new hearsay limitation to the Rules of Evidence, we are certain that it would have acted through its rule-making authority rather than impliedly doing so while rejecting an attempt to admit hearsay.

¶22 We hold that there is no "self-serving hearsay" bar that excludes an otherwise admissible statement. The descriptive language of the former "admissions" exception to the hearsay rule recited in *Finch* is not an independent

---

[4] At issue in that portion of *Finch* was the defendant's attempt to admit his own statement to a friend that rebutted a different statement he had made that the prosecutor had admitted against him. 137 Wn.2d at 824.

654

basis for excluding evidence. Instead, we believe the Washington Supreme Court hit the rhetorical nail on the head in *King* when discussing the topic: " 'self-serving' seems to be a shorthand way of saying that it was hearsay and did not fit into any of the recognized exceptions to the hearsay rule." 71 Wn.2d at 577.

¶23 The question next becomes whether or not the statement to Officer Arredondo was admissible under the excited utterance exception to the hearsay rule, ER 803(a)(2).[5] The requirements of this exception were discussed in *State v. Woods*, 143 Wn.2d 561, 597, 23 P.3d 1046, *cert. denied*, 534 U.S. 964 (2001):

> An out-of-court statement offered to prove the truth of the matter asserted is admissible at trial if the statement relates to "a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). We have previously stated that three closely connected requirements must be satisfied in order for a hearsay statement to qualify as an excited utterance. First, a startling event or condition must have occurred. Second, the statement must have been made while the declarant was under the stress or excitement caused by the startling event or condition. Third, the statement must relate to the startling event or condition. [*State v.*] *Chapin*, 118 Wn.2d [681,] 686[, 826 P.2d 194 (1992)]. Often, the key determination is whether the statement was made while the declarant was still under the influence of the event to the extent that the statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment. *State v. Strauss*, 119 Wn.2d 401, 416, 832 P.2d 78 (1992).

¶24 Mr. Pavlik argues that his statement to Officer Arredondo satisfied the requirements of the rule and that the trial court so found. While we agree that the evidence would have permitted a trial judge to find that his state-

---

[5] Mr. Pavlik also argues that the statement was admissible under the "state of mind" exception, ER 803(a)(3). The trial court rejected this argument on the basis that the statement reflected a conclusion rather than state of mind. RP at 35-36. This was a tenable ruling and did not amount to an abuse of discretion.

ment qualified as an excited utterance, we are less certain that the trial judge did so here. It is unclear from the trial court's decision, detailed previously, whether the court found the statement was an excited utterance but was erroneously trumped by the "self-serving hearsay" statement[6] from *Finch*, or whether the court found that the self-serving nature of the statement showed reflection, thus taking it outside of the excited utterance rule.[7]

¶25 The trial court did not expressly address the three factors recited by *Woods*. The court's finding of spontaneity addresses and supports the second factor of the test. *See Chapin*, 118 Wn.2d at 688. However, the trial court's commentary concerning the self-serving and conclusory nature of the statement undercuts the "under the influence" aspect of the second factor because self-serving or exculpatory statements, even though uttered only a few minutes after an incident, show conscious reflection. *See State v. Burton*, 115 Idaho 1154, 1156, 772 P.2d 1248 (1989) (defendant's statement five minutes after shooting); *State v. Stottlemyre*, 752 S.W.2d 840, 843 (Mo. Ct. App. 1988) (driver's statement 10 minutes after accident). Moreover, from his own research the trial judge was aware that "self-serving" statements often proved reflection rather than an excited utterance. RP at 15-16. The court also expressed skepticism about the prosecutor's argument that "self-serving hearsay" precluded admission of an excited utterance. RP at 21.

¶26 In sum, the trial court was well aware of the issue before it, but the reasoning behind the ruling is less than clear. It is doubtful on this record that Mr. Pavlik clearly has established an abuse of discretion, which is his burden in this

---

[6] "I think that's obviously self-serving. I don't believe that the other hearsay exceptions would trump it and therefore I'm granting the motion." RP at 36.

[7] "So the spontaneity of the statement is there but the spontaneity of the event, there's lots of things going through this individual's mind and that may have been his belief about the legal conclusion, but it is a self-serving statement. It's also a legal conclusion." RP at 35.

appeal. Nonetheless, we need not resolve the conflict because even if the trial court found the statement to be an excited utterance, the exclusion of the statement was harmless.

¶27 Nonconstitutional error is harmless if, within reasonable probability, it did not affect the verdict. *State v. Zwicker*, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986). That is the case here. Exclusion of the statement "it was self-defense" did not affect the defendant's case.

¶28 Officer Arredondo saw the end of the confrontation and largely supported Mr. Pavlik's contention that Mr. Leenders's torso was inside the car window at the time of the shooting. Mr. Pavlik consistently testified that he acted in self-defense both in firing the initial warning shot and in trying to prevent his gun from being taken. All of the officers who dealt with Mr. Pavlik testified that he was cooperative and talked to them. There was no allegation that Mr. Pavlik had only recently claimed to have acted in self-defense; the prosecutor steered well clear of that topic in order to avoid the statement coming in as a prior consistent statement. The defense did everything it needed to do to put the self-defense case before the jury. The statement was not a necessary component of its case, or even a particularly helpful piece of information.[8]

¶29 The self-defense claim failed on the facts of this case, not the absence of one statement. The "warning" shot incident, where Mr. Pavlik could have continued driving away from the bicyclists, showed that he was not afraid to be aggressive. His peculiar decision to drive in the opposite direction from his stated route instead of continuing to his home to call the police, or even calling the police from the safety of the gas station he initially drove to, undercut his

---

[8] If the statement had been admitted, the prosecutor may well have used it to argue the premeditation aspect of the attempted murder charge by contending it was evidence that Mr. Pavlik had worked out his story before returning to the scene. Because of the initial shooting, Mr. Pavlik knew that Mr. Leenders would not back down from a loaded weapon.

theory. Then, the decision to return to the area where the bicyclists had been heading and drive up to them also suggested that aggression rather than reporting to the police was on his mind. The self-defense case was weak, and the excluded statement did not help it.

¶30 If there was error here, it was harmless. The conviction is affirmed.

¶31 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BROWN, J., concurs.

¶32 SWEENEY, J. (dissenting) — Officer Stephen Arredondo approached Aleksandr Pavlik immediately following this shooting. Mr. Pavlik said, "You saw that, it was in self-defense." He said to Officer Zachary Dahle, "It was self defense, he was punching me" and "[r]elax guys, I have a concealed pistol license." Clerk's Papers (CP) at 47. And he told Officer David Daddato at the scene, "[y]ou saw him punching me in the face! I shot him in defense!" CP at 47. He reported again to Detective Chet Gilmore that he shot in self-defense and said that he tried to aim for a "not fatal area." CP at 47.

¶33 Not surprisingly, Mr. Pavlik argued to admit the statements for what they were—excited utterances. Report of Proceedings (RP) at 23-27. But the court refused to admit the statements because they were self-serving: "the self-serving quality of that statement under these circumstances is something that takes it outside of its admissibility." RP at 35.

¶34 I cannot find a case that holds that excited utterances are inadmissible if they are self-serving. Indeed, one party or the other wants them admitted because they tend to support a theory of the case, here self-defense.

658

¶35 We review a court's decision not to admit evidence for abuse of discretion, but only after we decide that the trial court properly interpreted the appropriate evidentiary rule. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). Here the question distills into a strictly legal question: Is an excited utterance excludable as evidence because it is self-serving? And so, whether the standard of review is characterized as abuse of discretion or de novo, the analysis is the same.

¶36 An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). This exception to the general prohibition against hearsay is based on the idea that "under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control." 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1747, at 195 (James H. Chadbourn rev. ed. 1976). The utterance of a person in such a state is believed to be "a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock," rather than an expression based on reflection or self-interest. *Id.* As a " 'firmly rooted hearsay exception,' " excited utterances are so " 'trustworthy that adversarial testing can be expected to add little to [their] reliability.' " *State v. Davis*, 141 Wn.2d 798, 846, 10 P.3d 977 (2000) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); *White v. Illinois*, 502 U.S. 346, 357, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992)).

¶37 ER 803(a)(2) includes three "closely connected requirements." *State v. Woods*, 143 Wn.2d 561, 597, 23 P.3d 1046 (2001). These requirements are (1) a startling event or condition, (2) the declarant must have made the statement while under the stress or excitement of the startling event or condition, and (3) the statement must relate to the startling event or condition. *Id.*

¶38 The second requirement of ER 803(a)(2) is that the declarant must have made the statement while the

declarant was under the stress of excitement caused by the startling event or condition. "This element constitutes the essence of the rule." *State v. Chapin*, 118 Wn.2d 681, 687, 826 P.2d 194 (1992). The "key" to this requirement is spontaneity, which means that it is important that "the utterance should be made contemporaneously with or soon after the startling event giving rise to it." *Id.* at 688. This is because there is a greater danger of fabrication as the length of time between the startling event and the statement increases. *Id.*

¶39 The third element of ER 803(a)(2) is that the utterance "related to" the startling event. ER 803(a)(2) is derived from the common law res gestae rule. *Chapin*, 118 Wn.2d at 688. Res gestae required the utterance to " 'explain, elucidate, or in some way characterize [the] event.' " *Id.* (alteration in original) (quoting *Beck v. Dye*, 200 Wash. 1, 9-10, 92 P.2d 1113 (1939)). ER 803(a)(2), however, does not have these requirements. *Chapin*, 118 Wn.2d at 688. ER 803(a)(2) requires only that the utterance "relate to" the event and this is a much broader standard. *Id.* An utterance "about, connected with, or elicited by" the startling event meets the "related to" requirement. *Id.*

¶40 To decide whether a statement can be admitted as an excited utterance, the court must make some preliminary findings. ER 104(a). The court here found that the "spontaneity of the statement is there." RP at 35. So the second requirement of ER 803(a)(2) is satisfied. The fact-finding on the other two requirements is a bit hazy on this record, but still sufficient. The court found that

> [t]his event occurred over a period of time where the bicycle rider and the vehicle became involved in an altercation of some sort . . . . It continued over a period of distance and time, culminating in the final confrontation where the bicycle rider allegedly went up to the window and started thumping the defendant, who had a gun and previously had fired the gun at another point in time in another location.

RP at 35. Shooting a cyclist who had just reached into your car to perhaps harm you would be startling to most folks and would, therefore, seem easily to satisfy the first requirement of ER 803(a)(2). The trial court did not make any findings regarding the third requirement. But the statement "I shot him in self-defense!" after shooting somebody would again certainly seem to "relate to" the startling event of having just shot somebody. The statements here are clearly excited utterances. They are also self-serving. But that does not render them inadmissible. And no case in Washington holds that excited utterances are inadmissible because they are self-serving.

¶41 Other courts are in accord. "If a statement otherwise meets the 'excited utterance' test it should not be excluded simply because it is helpful to the declarant's position." *State v. Williams*, 673 S.W.2d 32, 35 (Mo. 1984). The refusal to admit an exculpatory excited utterance has been held to be grounds for a new trial. *People v. Melendez*, 296 A.D.2d 424, 744 N.Y.S.2d 485 (2002). In *Melendez*, a 911 call recording was suppressed. The recording supported the defense theory that a stabbing was accidental and that the defendant tried to save the victim's life. *Id.* The court reversed the conviction "since the issue of the defendant's intent was so critical to her defense, and she was deprived of the right to place admissible evidence which supported her defense before the jury, she [was] entitled to a new trial." *Id.* at 426.

¶42 Other states also conclude that a defendant's excited utterances are admissible regardless of whether the defendant testifies. *See State v. Riley*, 128 N.C. App. 265, 269, 495 S.E.2d 181 (1998) (trial court erred in not letting a witness testify as to the defendant's exculpatory excited utterance); *People v. Pack*, 797 P.2d 774, 775-76 (Colo. App. 1990) (an excited utterance is not inadmissible because it is exculpatory, but holding that the error was harmless because the evidence was cumulative); *State v. Conn*, 137 Ariz. 152, 155, 669 P.2d 585 (Ct. App. 1982) (statement was inadmissible,

not because it was self-serving, but because it was not spontaneous), *aff'd in part*, 137 Ariz. 148, 669 P.2d 581 (1983); *Harmon v. State*, 854 So. 2d 697, 699-700 (Fla. Dist. Ct. App. 2003) (the excited utterance of the defendant would have been admissible, but holding that the trial court properly excluded it because there was no showing of relevancy); *Reado v. State*, 690 S.W.2d 15, 17 (Tex. Crim. App. 1984) (the general rule that the accused's exculpatory statements are inadmissible does not apply when the statement is res gestae, but holding that the statement in question was not admissible on other grounds).

¶43 The trial judge here noted that Mr. Pavlik's statements were excited utterances. That was correct. The court erred by refusing to admit Mr. Pavlik's excited utterance.

¶44 We should nonetheless affirm the conviction if we conclude that the error was harmless—that is that the erroneous exclusion of this excited utterance could not have affected the outcome here. But to do that, we would have to say that Mr. Pavlik's statements to these police officers immediately after this shooting did not and could not have affected the outcome of the jury trial. I cannot say that.

¶45 In my experience, police officers are usually very effective and potentially very influential witnesses. Indeed, the suggestion that statements by the first officers on the scene and the investigating detective would *not* have the potential to influence a jury seems to me fanciful. The essential idea behind the doctrine of harmless error is that the offending testimony would not have made any difference or, at least, it should not make a difference. *State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004). This testimony could have made a difference. The court's decision to exclude this testimony was not harmless. Mr. Pavlik's defense was self-defense and the court appropriately instructed on self-defense. CP at 126-31. His excited utterances to police at the scene were highly probative of

that defense and the jury should have been allowed to weigh the probative value of that evidence.

¶46 I would reverse and remand.

Reconsideration denied February 9, 2012.

Review denied at 174 Wn.2d 1009 (2012).