FILED
COURT OF APPEALS
DIVISION II

2013 JUN -4 AM 8: 55

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42280-8-II |
| Respondent, | consolidated with<br>No. 42284-1-II |
| v. | |
| SCOTT EUGENE COLLINS, | UNPUBLISHED OPINION |
| Appellant. | |

Penoyar, J. — In a consolidated appeal, Scott Collins challenges his convictions for possession of a stolen vehicle, making a false statement to a public servant, and unlawful possession of a controlled substance (methamphetamine). He argues that (1) he was unlawfully seized; (2) the evidence is insufficient to prove that he made a false statement to a public servant and that he possessed methamphetamine; (3) the trial court admitted propensity evidence in violation of ER 404(b); (4) counsel was ineffective for failing to challenge his initial detention; (5) the trial court erred when it refused to give his knowing possession jury instruction; and (6) the trial court erred by excluding his exculpatory statements. We hold that (1) Collins waived his argument that he was seized at the outset of his encounter with the deputies; (2) there is sufficient evidence that Collins made a false statement and possessed the methamphetamine; (3) the trial court properly applied ER 404(b); (4) counsel's failure to argue that Collins was unlawfully seized was not prejudicial; (5) the trial court did not err by refusing to give Collins's instruction because knowledge is not an element of unlawful possession of a controlled substance; and (6) although the trial court erred in its analysis of the admissibility of the exculpatory statements, this was harmless error. We affirm.

## FACTS

I. POSSESSION OF A STOLEN VEHICLE; MAKING A FALSE STATEMENT TO A PUBLIC SERVANT

On June 27, 2010, Jethro Welter heard a crash and saw a blue truck wrecked in his front yard. Welter saw Collins exiting the driver's side of the truck. He asked Collins what happened, and Collins said a dog ran out in front of the truck. Welter went into his home and called 911 to report the accident.

Welter's neighbor, Marie Brenner, heard the crash and went to investigate. She saw her neighbor, Frank Cano, talking to another man. As she approached, the other man took off running.

Deputy Robert Stumph and Deputy Cory Robinson arrived on the scene about 10 minutes after Welter's 911 call. They saw a blue truck crashed against a tree and Brenner and Cano standing across the street. They approached Brenner and Cano, and Brenner told the deputies that a man had run toward the woods behind Cano's house as the police approached. The deputies searched the backyard for the man, and were about to enter Cano's house, when they saw Collins descending Cano's stairs.

Robinson told Collins that he was there to investigate the accident and asked Collins if he knew what happened. Collins said that Chad Campbell was driving the truck and that he was asleep in the passenger seat. Collins was unable to provide a phone number or address for Campbell but said that he may have been at Allan's house. Collins did not have any contact information for Allan, and he provided only a vague description of where Allan's house was located.

While Robinson was speaking with Collins, Stumph went to interview other witnesses. Before he left, Stumph overheard Collins telling Robinson that he was a passenger and that his

2

friend was driving. Stumph then interviewed Welter, who stated that Collins was the driver. Stumph also learned from dispatch that Collins's license had expired. Stumph then placed Collins under arrest.

After Stumph arrested Collins, Robinson read him his *Miranda*[1] rights. Collins then told Robinson that he was the driver and only occupant of the truck and that he "made up Chad." Report of Proceedings (RP) (Apr. 19, 2011) at 27. Before placing Collins in the patrol car, Robinson searched him incident to arrest and found an ignition switch and several keys.

After he placed Collins under arrest, Stumph went to look at the truck. He noticed that the steering column was torn apart and the ignition was lying on the floorboard. The back window of the truck was broken and the cab contained pieces of glass. Stumph contacted dispatch to determine who owned the truck. The truck belonged to Gweneth McDonald, who stated that she did not give Collins permission to drive it and that the steering column, ignition, and back window were in good condition when she last saw it.

Robinson questioned Collins about the truck and Collins replied that he borrowed it from someone named Bruce. Collins did not know Bruce's last name or how to contact him.

The deputies also discovered a plastic bag lying next to Cano's back door. Collins said the bag was his. The bag contained Collins's personal effects, paperwork relating to the blue truck, and a key ring containing multiple models of car keys.

The State charged Collins with possession of a stolen vehicle, obstructing a law enforcement officer, and making a false or misleading statement to a public servant. After a CrR 3.5 hearing, the trial court admitted both Collins's pre- and post-*Miranda* statements. It concluded that Collins was not in custody when he made the pre-*Miranda* statements because he

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

was not cuffed, the questions were intended to gather information about the accident and not to elicit incriminating information, and the contact was for a short duration. The trial court concluded that the post-*Miranda* statements were admissible because Robinson read Collins his rights, there was no coercion, and Collins understood his rights and the consequences of waiving them, as evidenced by his later invocation of his right to an attorney.

Collins also requested a CrR 3.6 hearing to suppress the ignition switch and keys Robinson found during his search incident to arrest. At the hearing, Stumph testified that he arrested Collins for driving a vehicle without a license. Because the State apparently conceded that Stumph lacked probable cause to arrest Collins for that crime,[2] Collins argued that the arrest and the resulting search were unlawful. The State argued that Stumph had probable cause to arrest Collins for making a false statement to a public servant. The trial court agreed that there was probable cause to arrest Collins for making a false statement and denied his suppression motion.

Collins made a motion in limine to prohibit testimony that he possessed a key ring with multiple types of keys on it. He argued that the evidence should be suppressed under ER 403 and 404. The trial court ruled that the evidence was admissible to show that Collins knew the truck was stolen.

The trial court, on the State's motion, dismissed Collins's obstruction charge. The jury found Collins guilty of making a false statement to a public servant and possession of a stolen vehicle. The trial court sentenced him to 18 months' confinement for possession of a stolen vehicle and 365 days' confinement for making a false statement. Collins appeals.

---

[2] Presumably because it did not occur in the deputies' presence.

4

## II. METHAMPHETAMINE POSSESSION[3]

On September 15, 2010, Trooper Todd Surdam stopped Collins for failing to wear a seat belt. Surdam asked Collins for identification and Collins reached into his pocket and withdrew a folded piece of paper.[4] Collins unfolded the paper, and a "chunk of white crystal substance" fell out of it and onto Collins's lap. RP (Apr. 19, 2011) at 60. Based on his training, Surdam recognized the substance as methamphetamine. Surdam asked Collins to get out of the vehicle. After Collins left the vehicle, Surdam saw the substance on the doorjamb of the vehicle. Surdam arrested Collins and read him his *Miranda* rights. Collins admitted that the substance was methamphetamine and that "he knew it was there." RP (Apr. 19, 2011) at 64. Collins also said that "[h]e wanted to talk to someone about where the other people were," that "the meth was not his," and that he "was taking [the vehicle] for a test drive." RP (Apr. 19, 2011) at 10. Surdam retrieved the methamphetamine from the vehicle and sent it to the state crime lab for evaluation. The crime lab determined that the substance was methamphetamine. The State charged Collins with unlawful possession of a controlled substance (methamphetamine).

At trial, the State filed a motion in limine to exclude as hearsay Collins's statements that "[h]e wanted to talk to someone about where the other people were" and "the meth was not his." RP (Apr. 19, 2011) at 10. The trial court granted the State's motion and excluded the statements as hearsay, concluding that they did not meet the requirements for the admission by a party opponent exception. The trial court also concluded, after "weigh[ing] the dis-serving and the self-serving aspects of [the statements,]" that they were not admissible under ER 106, the rule of completeness. RP (Apr. 19, 2011) at 15.

---

[3] These two cases were sentenced together and consolidated on appeal.

[4] At trial, the parties stipulated that the paper identified Collins.

5

Collins proposed the following jury instruction: "It is a crime for a person to knowingly possess a controlled substance." RP (Apr. 19, 2011) at 83. The trial court rejected this instruction, stating that knowledge is not an element of unlawful possession under Washington law. The jury found Collins guilty of unlawful possession, and the trial court sentenced him to 18 months' confinement. Collins appeals.

## ANALYSIS

I.     POSSESSION OF A STOLEN VEHICLE; MAKING A FALSE STATEMENT TO A PUBLIC SERVANT

A.     Seizure

Collins first argues that he was unlawfully seized from the outset of his encounter with Robinson and Stumph and that all subsequently obtained evidence should be suppressed.[5] The State argues that Collins waived this issue because he never argued at the trial court that he was unlawfully seized prior to his arrest. Rather, he argued only that he was in custody for purposes of *Miranda* warnings, which involves a different inquiry than whether he was unlawfully seized. We agree with the State that Collins failed to assert this argument at the trial court and hold that it is therefore waived on appeal because it was not a manifest constitutional error.

Generally, a defendant cannot raise an error for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). "The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this

---

[5] Collins also argues that the record does not support two of the trial court's findings: "Robinson testified that Collins was not seized" and "witnesses [said] they saw Collins in the crashed car." Appellant's Br. at 10. He argues that the trial court relied on these findings in concluding that Robinson's initial detention of Collins was lawful. Collins fails to provide citations to the record for these findings. Accordingly, we decline to review his argument. RAP 10.3(a)(5), (6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

showing of actual prejudice that makes the error 'manifest', allowing appellate review." *McFarland*, 127 Wn.2d at 333. This requires the defendant to show that the trial court would likely have granted the suppression motion if made. *McFarland*, 127 Wn.2d at 334. In *McFarland*, the court determined that the record lacked a factual basis for determining the merits of the claim. 127 Wn.2d at 334 n.2. However, in this case, the facts elicited in the CrR 3.5 hearing allow us to determine whether the trial court would likely have granted the suppression motion. *See State v. Contreras*, 92 Wn. App. 307, 314, 966 P.2d 915 (1998) (despite the absence of a motion to suppress and a ruling, the record was sufficiently developed for the appellate court to determine whether a motion to suppress would have been granted).

Here, the record does not show actual prejudice. The evidence does not show that Collins was seized prior to his arrest; thus, any motion to suppress would have been denied. Robinson contacted Collins as he emerged from Cano's house and asked him a series of questions. At no time did he order Collins to stop or restrain him in any way.

A seizure occurs when, due to an officer's use of physical force or authority, an "individual's freedom of movement is restrained and the individual would not believe [that] he . . . is free to leave or decline a request." *State v. Harrington*, 167 Wn.2d 656, 663, 222 P.3d 92 (2009) (quoting *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004)). This is a purely objective inquiry. *State v. Young*, 135 Wn.2d 498, 501, 957 P.2d 681 (1998).

Circumstances that are likely to result in a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Young*, 135 Wn.2d at 512 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). Additionally, a seizure occurs

when an officer commands a person to stop or demands information from him, but no seizure occurs when an officer merely approaches an individual in public and requests to talk to him. *State v. O'Neill*, 148 Wn.2d 564, 577-78, 62 P.3d 489 (2003).

Collins's argument that he was seized is based on Robinson's testimony at the CrR 3.5 hearing. When asked if Collins was free to leave, Robinson replied, "I'm tryin' to figure out if he was the driver of the car, or not." RP (Apr. 14, 2011) at 33. The prosecutor then said, "You didn't . . . cuff him and he wasn't arrested; right?" RP (Apr. 14, 2011) at 33. To which Robinson replied, "No." RP (Apr. 14, 2011) at 33. On cross-examination, defense counsel asked Robinson again if Collins was free to leave, and, this time, Robinson said, "No." RP (Apr. 14, 2011) at 37.

Robinson contacted Collins as he emerged from Cano's house and asked him a series of questions. This contact lasted only a "few minutes." RP (Apr. 14, 2011) at 37. Robinson did not cuff, arrest, or otherwise restrain Collins until later. He did not command Collins to stop or demand information from him. While there were two officers at the scene, Stumph was only present for a short time before he left to interview other witnesses. Robinson's statement on cross-examination that Collins was not free to leave tells us only what was in his mind. What matters here is not what the officer thought but what he did. Robinson's actions, viewed objectively, would not lead someone in Collins's position to believe that he was not free to leave. Therefore, the trial court would not have granted Collins's suppression motion and he cannot show manifest constitutional error.[6]

---

[6] Collins further argues that his counsel was ineffective for not challenging his initial interaction with Robinson as an unlawful seizure. As discussed above, the result of the trial would not have differed if counsel had challenged the alleged seizure. Collins's argument fails.

8

B.    Warrantless Arrest

Collins next argues that the trial court erroneously concluded that there was probable cause to arrest him. He argues that, because the stated crime of arrest was driving without a license and the State conceded that Stumph lacked probable cause for that offense, the arrest was unlawful and all evidence resulting from his arrest should be suppressed. But Stumph only needed probable cause to arrest for *an* offense, not necessarily the offense he stated, and there was probable cause to arrest Collins for making a false or misleading statement.

We review conclusions of law from a suppression hearing de novo. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). The validity of an arrest depends on objective facts and circumstances. *State v. Huff*, 64 Wn. App. 641, 645, 826 P.2d 698 (1992). "[A]n arrest supported by probable cause is not made unlawful by an officer's subjective reliance on, or verbal announcement of, an offense different from the one for which probable cause exists." *Huff*, 64 Wn. App. at 646. Probable cause for an arrest exists where the officer knows of circumstances that would lead a reasonably cautious person to believe that the suspect has committed a crime. *State v. Terranova*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986).

Under RCW 9A.76.175,

[a] person who knowingly makes a false or misleading material statement to a public servant is guilty of a gross misdemeanor. "Material statement" means a written or oral statement reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties.

An officer may make a warrantless arrest for a misdemeanor if the offense was committed in the presence of the officer. RCW 10.31.100.

Searches incident to lawful arrest are a recognized exception to the warrant requirement. *State v. Johnson*, 128 Wn.2d 431, 447, 909 P.2d 293 (1996). A lawful custodial arrest supported by probable cause is a prerequisite to a search incident to arrest. *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007).

Stumph had probable cause to arrest Collins for making a false statement to a public servant. Stumph was present when Collins told Robinson that Chad Campbell was driving the truck. A few minutes later, Stumph spoke with Welter and learned that Collins was in fact the driver. After obtaining this information, Stumph placed Collins under arrest. At that point, there was probable cause to arrest Collins for making a false statement. Because Stumph was present when Collins made the false statement, the warrantless arrest was lawful under RCW 10.31.100. Since the underlying arrest was lawful, the trial court did not err by admitting the evidence obtained from the search incident to arrest.

C. Sufficiency

Collins next argues that there is insufficient evidence to support his conviction for making a false statement because the State failed to prove that "lying to Robinson was a crime" or that Robinson relied on Collins's statements. Appellant's Br. at 22. Lying to an officer is a crime under RCW 9A.76.175 and the State provided sufficient evidence for the jury to infer that Robinson was reasonably likely to rely on Collins's statements; thus, Collins's insufficient evidence argument fails.

Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157

Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

A person is guilty of a misdemeanor if he knowingly makes a false or misleading material statement to a public servant. RCW 9A.76.175. A statement is material if it is "reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties." RCW 9A.76.175. The State does not have to prove that the officer actually relied on the statements. *State v. Godsey*, 131 Wn. App. 278, 291, 127 P.3d 11 (2006).

Lying to a police officer is a crime. RCW 9A.76.175. Collins argues that, since he did not have an obligation to talk to Robinson, he likewise did not have an obligation to be truthful. Collins is correct that he did not have an obligation to speak to Robinson. *See O'Neill*, 148 Wn.2d at 579. However, once he chose to speak to Robinson, he had an obligation to be truthful or risk prosecution for making a false statement to a public servant.

Additionally, there is sufficient evidence that Robinson was reasonably likely to rely on Collins's statements. When Robinson approached Collins, he did not know who the driver was or how the accident had occurred. After Collins told Robinson that Campbell was driving, Robinson recorded this information in his notes and attempted to learn more about Campbell and where he could be located. Given these facts, the jury could infer that Collins knew it was reasonably likely that Robinson would rely on these statements for his investigation.

D.    ER 404(b)

Collins further argues that the trial court erred when it denied his motion to exclude the key ring under ER 404(b). Specifically, he argues that the trial court failed to conduct its ER

404(b) analysis on the record and failed to establish that the evidence was relevant to prove an element of the crime charged. Because the trial court conducted its analysis on the record and established that the key ring was relevant to whether Collins knew the vehicle was stolen, we affirm.

We review a trial court's decision to admit evidence under ER 404(b) to determine whether the decision was manifestly unreasonable or based on untenable grounds or reasons. *State v. DeVincentis,* 150 Wn.2d 11, 17, 74 P.3d 119 (2003); *State v. Rohrich,* 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Evidence of other crimes, wrongs, or acts is inadmissible to prove that the defendant has a criminal propensity. ER 404(b). However, such evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. ER 404(b).

Before admitting the evidence, the trial court must (1) find by a preponderance of evidence that the action occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect. *State v. Vy Thang,* 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). This analysis must be conducted on the record. *State v. Foxhoven,* 161 Wn.2d 168, 175, 163 P.3d 786 (2007).

Here, the trial court did conduct its analysis on the record:

> The State's position is that [the key ring] goes to show knowledge that the vehicle was stolen.
>
> . . . .
>
> I think here—I think the evidence is relevant. It has a tendency to prove a fact that's at issue, more or less likely—so, I think it's relevant. Then, I guess, the question is does it—is it propensity evidence, or is it [sic] the danger of unfair prejudice, is it outweighed by the probative value of it.

> I don't think the . . . danger of unfair prejudice here outweighs the probative value; so—and I don't think it's propensity evidence, I think that's allowable under . . . 403 and also 404.

RP (Apr. 14, 2011) at 56. As for the first prong, it was uncontested that the key ring was found in Collins's possession. The trial court considered the other three prongs in the analysis quoted above. It identified the purpose for admitting the evidence: to show knowledge that the vehicle was stolen; it determined that the evidence was relevant: the State must prove that Collins knew the vehicle was stolen; and it weighed the probative value of the evidence against its prejudicial effect.

Further, the trial court established that the evidence was relevant to prove an element of the crime charged. Collins was charged with possession of a stolen vehicle under RCW 9A.56.068(1). This requires the State to prove that Collins knew the vehicle was stolen. RCW 9A.56.140(1). Robinson testified that it is common to find large numbers of keys on people caught stealing vehicles because they use the keys to access the vehicle without forcing entry. Immediately before concluding that the evidence was relevant, the trial court restated the State's argument that it was relevant to show knowledge that the vehicle was stolen. Thus, the trial court considered the reasons for admitting the evidence immediately before ruling that it was relevant. The trial court did not err by admitting the key ring.

II.     METHAMPHETAMINE POSSESSION

A.     Sufficiency

Collins first argues that the evidence is insufficient to prove he possessed the methamphetamine found on the doorjamb. Because it is reasonable to infer that the

13

methamphetamine from his pocket fell to the doorjamb when he left the vehicle, this argument is not persuasive.

"It is unlawful for any person to possess a controlled substance." Former RCW 69.50.4013(1) (2003). Possession may be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). Here, the trial court only instructed the jury on actual possession.[7] A defendant has actual possession if the substance is in his personal custody. *Staley*, 123 Wn.2d at 798.

Collins attempts to argue that there were two crystalline substances: one that fell from the folded paper onto his lap and one that was lying on the doorjamb. Collins contends that there is no evidence that he "ever touched" the substance found on the doorjamb. Appellant's Br. at 35. His arguments are not persuasive. Interpreting all reasonable inferences in the State's favor, there is sufficient evidence to prove that Collins actually possessed the methamphetamine that was on the doorjamb. Surdam saw the crystalline substance fall from the folded paper onto Collins's lap. Collins does not attempt to argue that there is insufficient evidence that he actually possessed this substance. Surdam then found a substance, later identified as methamphetamine, on the doorjamb next to Collins's seat immediately after Collins left the vehicle. It is reasonable to infer that the substance from the paper fell from Collins's lap and onto the doorjamb when he left the vehicle. There is sufficient evidence that there was only one crystalline substance and that Collins had personal custody of it.

---

[7] "Instruction No. 8: 'Possession' means having a substance in one's custody. Possession occurs when the item is in the actual physical custody of the person charged with possession." RP (Apr. 19, 2011) at 101-02.

B.     Jury Instruction

Collins next argues that the State was relieved of its burden to prove the essential elements of unlawful possession because the trial court rejected his jury instruction requiring knowing possession. Because knowledge is not an element of unlawful possession, the trial court did not err.

When a trial court's decision whether or not to give a proposed jury instruction is based on law, we review that decision de novo. *State v. Lucky*, 128 Wn.2d 727, 731, 912 P.2d 483 (1996), *overruled on other grounds by State v. Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997). Washington courts have repeatedly held that knowledge is not an element of unlawful possession. *See State v. Bradshaw*, 152 Wn.2d 528, 98 P.3d 1190 (2004).

In *State v. Cleppe*, the Supreme Court held that knowledge is not a required element of unlawful possession. 96 Wn.2d 373, 378, 635 P.2d 435 (1981). The court reasoned that, since the legislature removed the mens rea requirement from a previous version of the bill, it intended to omit knowledge as an element of unlawful possession. *Cleppe*, 96 Wn.2d at 380. The court further stated that the unwitting possession defense "ameliorates the harshness" of the unlawful possession statute by allowing the defendant to prove he had no knowledge of his possession. *Cleppe*, 96 Wn.2d at 380-81. More than twenty years later, in *Bradshaw*, the Supreme Court specifically declined to overrule *Cleppe*. 152 Wn.2d at 539. The court noted that the legislature had amended RCW 69.50.401 seven times since *Cleppe* and had not added a mens rea element to the unlawful possession statute. *Bradshaw*, 152 Wn.2d at 533. Given this clear legal precedent, the trial court did not err when it rejected Collins's proposed knowledge instruction.

C.    Exculpatory Statements

Finally, Collins argues that the trial court violated the rule of completeness and denied him a complete defense when it excluded his exculpatory statements to Surdam. He argues that (1) the statements were not hearsay, (2) the State opened the door to the statements, and (3) the trial court misapplied the rule of completeness. Because (1) the trial court properly concluded that the statements were hearsay, (2) the statements were not relevant to an issue at trial, and (3) the trial court's misapplication of ER 106 was harmless error, we disagree.

We review a trial court's admission of evidence to determine if the decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Bourgeois*, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997); *Rohrich*, 149 Wn.2d at 654.

Collins first contends that his statements were not hearsay. Because his statements do not qualify as admissions by a party opponent and because he failed to argue the mental state exception at the trial court, we disagree.

An admission by a party opponent is not hearsay. ER 801(d)(2). However, a party's self-serving statements do not fall within this hearsay exception. *State v. Pavlik*, 165 Wn. App. 645, 653-54, 268 P.3d 986 (2011). A party cannot change theories of admissibility on appeal. *Pavlik*, 165 Wn. App. at 651.

Here, Collins's statements that others were involved and that the methamphetamine was not his were hearsay. The trial court correctly concluded that the statements were self-serving and did not qualify as admissions by a party opponent. On appeal, Collins argues that his statements were not hearsay because they fall within the existing mental state exception. At trial, Collins argued only that the statements were admissible under ER 106, the rule of completeness.

He cannot now assert that his statements were admissible under a hearsay exception not argued at the trial court.

Next, Collins argues that the State opened the door to his statements. Because Collins's statements regarding ownership of the methamphetamine were not relevant to an issue at trial, his statements were not admissible under the open door doctrine.

"[O]nce a party has raised a material issue, the opposing party is permitted to explain, clarify, or contradict the evidence." *State v. Berg*, 147 Wn. App. 923, 939, 198 P.3d 529 (2008), *abrogated on other grounds by State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011). This means that otherwise inadmissible evidence may be admissible if a party first "opens the door" and the inadmissible evidence is relevant to an issue at trial. *State v. Stockton*, 91 Wn. App. 35, 40, 955 P.2d 805 (1998).

Here, even if the State had opened the door, Collins's statements about ownership of the methamphetamine were not relevant to an issue at trial. Collins did not assert an unwitting possession defense. Therefore, as long as the State proved that Collins possessed the methamphetamine, which it did, it is irrelevant whether Collins "owned" the methamphetamine.

Collins also argues that the trial court misapplied the rule of completeness, ER 106. Although the trial court did not perform the correct analysis under ER 106, this was harmless error.

Under ER 106, when part of a statement is admitted, "an adverse party may require the party at that time to introduce any other part . . . which ought in fairness to be considered contemporaneously with it." However, the redacted parts are admissible only if they are relevant to an issue in the case and then only if they are needed to clarify or explain the admitted

statements. *State v. Larry*, 108 Wn. App. 894, 910, 34 P.3d 241 (2001) (quoting *United States v. Haddad*, 10 F.3d 1252, 1258-59 (7th Cir. 1993)).

Here, the trial court did not engage in the correct analysis under ER 106. The trial court determined that the statements were hearsay and then proceeded to balance the "self-serving aspects and the dis-serving aspects of the statement[s]." RP (Apr. 19, 2011) at 13-14. This is not the test; rather, the trial court considers whether the statements are relevant and then whether they are necessary to clarify or explain the admitted statements.

However, the trial court's failure to apply the correct analysis is harmless error. Collins's defense at trial was that he did not possess the methamphetamine. He argued that the State could not connect the methamphetamine found on the doorjamb with the suspected methamphetamine that fell from the folded paper. Thus, the trial court's exclusion of Collins's statements that the methamphetamine found on the doorjamb belonged to someone else did not deprive him of his constitutional right to present his defense, and the trial court's error in applying ER 106 was not a constitutional error. *See State v. Anderson*, 112 Wn. App. 828, 837, 51 P.3d 179 (2002). Accordingly, the non-constitutional harmless error standard applies and the trial court's error is harmless unless it materially affected the outcome of the trial. *Bourgeois*, 133 Wn.2d at 403.

If the trial court had performed the proper analysis under ER 106, the outcome would have been the same. As discussed above, Collins's statements regarding ownership of the methamphetamine were not relevant to an issue in the case because Collins did not assert an unwitting possession defense. Therefore, the statements did not meet the first requirement for admissibility under ER 106. Although the trial court did not use the proper analysis, this error did not prejudice Collins.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Van Deren, J.

Worswick, C.J.