FILED
COURT OF APPEALS
DIVISION II

2015 JUL 28 AM 8: 23

STATE OF WASHINGTON

BY

DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45242-1-II |
| Respondent, | |
| v. | |
| MARCOS ROBERTO LOZANO, | PUBLISHED IN PART OPINION |
| Appellant. | |

MELNICK, J. — Marcos Lozano appeals his conviction for rape in the second degree, arguing that the trial court erred by instructing the jury that he had the burden of proving the "reasonable belief" defense and that his counsel was ineffective for not proposing instructions on the defense of consent. In the published portion of this opinion, we hold that the challenged jury instruction on the "reasonable belief" defense did not violate due process because this defense does not negate an element of rape in the second degree where the State solely alleged the sexual intercourse occurred with a person incapable of consent by reason of being physically helpless or mentally incapacitated. And, we further hold that Lozano's counsel did not provide ineffective assistance for failing to propose instructions on consent because consent is not an affirmative defense to a charge of rape in the second degree where the State solely alleged the sexual intercourse occurred with a person incapable of consent by reason of being physically helpless or mentally incapacitated.

In the unpublished portion of this opinion, we hold that the trial court did not err by excluding as hearsay a witness's transcribed statement after the State used a small portion of the statement only to refresh the witness's recollection. We also hold that the issues raised in Lozano's statement of additional grounds (SAG) have no merit. Accordingly, we affirm.

FACTS

Lozano met a woman, C.C., online through social media. They arranged to meet on the evening of February 7, 2009. C.C. went to Lozano's place of employment and waited for him to finish his shift. While waiting for Lozano, C.C. received a call from her good friend A.B. who asked for a ride home from a bar. C.C. picked up A.B. and then drove back to Lozano's place of employment, where he was just getting off work. C.C. and A.B. then followed Lozano to his house.

When they arrived at Lozano's house, the three went upstairs to his bedroom. Lozano gave them each a beer and opened one for himself. Shortly thereafter, A.B. fell asleep on a small couch near Lozano's bed. Lozano and C.C. talked to each other, drank several beers, listened to music, started to watch a movie, and had consensual intercourse. C.C. then fell asleep.

Later, C.C. woke up and saw Lozano having sexual intercourse with A.B. A.B. was unclothed and appeared to still be asleep. C.C. yelled at Lozano to get off A.B. and he did. C.C. shook A.B. awake and helped her gather her clothes. C.C. and A.B. left Lozano's house immediately.

According to A.B., she remembered walking up the stairs to Lozano's bedroom, sitting on the couch next to his bed, drinking a sip of beer, and then falling asleep right away. She confirmed that she fell asleep fully clothed. She explained that she woke up disoriented and concerned because C.C. was yelling and because she was not wearing pants or underwear. A.B. remembered "feeling [Lozano] come out of [her]." RP at 209. She saw him walk across the room, remove a condom, and place it in a trash can.

The State charged Lozano with rape in the second degree and alleged that A.B. was incapable of consent by reason of being physically helpless or mentally incapacitated. Lozano's

2

first jury trial ended in a conviction, but we reversed the conviction and remanded for a new trial. *See State v. Lozano*, noted at 167 Wn. App. 1021, 2012 WL 1047418. Lozano's second jury trial occurred in July 2013.

At the second trial, Lozano's defense theory was that A.B. initiated and consented to sexual intercourse with him and that even if A.B. was incapable of consent, he reasonably believed that she could consent. He testified that when C.C. woke up and saw him having sexual intercourse with A.B., C.C. got mad. The two women then dressed quickly and left.

Lozano presented expert testimony to explain alcohol's effect on memory and the concept of confabulation. The trial court instructed the jury on the "reasonable belief" defense contained in RCW 9A.44.030(1). Lozano did not propose a consent defense instruction.

The jury found Lozano guilty of rape in the second degree. Lozano appeals his conviction.

## ANALYSIS

I.    "REASONABLE BELIEF" DEFENSE JURY INSTRUCTION

Lozano argues for the first time on appeal that the trial court violated his due process right under the federal and state constitutions by instructing jurors on the "reasonable belief" defense[1] because the instruction allocated to him the burden of proving that he reasonably believed the

---

[1] RCW 9A.44.030(1) provides:

> In any prosecution under this chapter in which lack of consent is based solely upon the victim's mental incapacity or upon the victim's being physically helpless, it is a defense which the defendant must prove by a preponderance of the evidence that at the time of the offense the defendant reasonably believed that the victim was not mentally incapacitated and/or physically helpless.

victim was capable of consent.[2] We hold that the "reasonable belief" instruction did not violate

due process because the instruction did not impose a burden on Lozano to prove any element of

the charged crime.

The State charged Lozano with rape in the second degree under RCW 9A.44.050(1)(b),

which required the State to prove beyond a reasonable doubt that Lozano engaged in sexual

intercourse with A.B. when she was incapable of consent by reason of being physically helpless

or mentally incapacitated. The trial court instructed the jury that it was a defense to the charge of

rape in the second degree that at the time of the offense the defendant reasonably believed that

A.B. was not mentally incapacitated or physically helpless.[3] The instruction further provided that

Lozano had the burden to prove this defense by a preponderance of the evidence. Although the

record does not reflect which party proposed this instruction, Lozano did not object to it.[4]

---

[2] A claim of instructional error is waived when not presented to the trial court unless the claimed error constitutes a manifest error affecting a constitutional right. RAP 2.5(a)(3). Because Lozano's allegation that the instruction impermissibly shifted the burden of proof implicates his federal and state constitutional due process rights, we consider his claim of instructional error for the first time on appeal.

[3] *See* RCW 9A.44.030(1).

[4] On appeal, Lozano denies that he presented a reasonable belief defense, arguing that he relied instead on a consent defense at trial. But the record undermines Lozano's contention that he did not assert a "reasonable belief" defense. He testified that he did not know how much alcohol A.B. drank. He also presented expert testimony about alcohol induced blackouts, which are amnesiac events in which a person is awake and functioning but his or her brain is not able to imprint a memory of the events. The expert testified that a person in a blackout state could act and then not remember, including travel to other cities. Based on this testimony, Lozano argued in closing that he did not see anything that would have led a reasonable person to believe A.B. was highly intoxicated. He asked the jury how could he be expected to know if A.B. was in a blackout? There is nothing in the record to suggest that Lozano was forced to present the reasonable belief defense or that the instruction was given over his objection.

The due process clause of the Fourteenth Amendment requires the State to prove beyond a reasonable doubt every fact necessary to convict the defendant of the charged crime.[5] *State v. W.R.*, 181 Wn.2d 757, 761-62, 336 P.3d 1134 (2014). "A corollary rule is that the State cannot require the defendant to disprove any fact that constitutes the crime charged." *W.R.*, 181 Wn.2d at 762. Whether due process prevents the legislature from allocating the burden of proof of a defense to the defendant depends on the relationship between the elements of the charged crime and the elements of the defense. *W.R.*, 181 Wn.2d at 762. A defense that merely excuses conduct that would otherwise be punishable is a true affirmative defense, and the burden of proving it may be allocated to the defendant. *W.R.*, 181 Wn.2d at 762; *State v. Fry*, 168 Wn.2d 1, 7, 228 P.3d 1 (2010). But where a defense necessarily negates an element of the crime, the legislature may not allocate to the defendant the burden of proving the defense. *W.R.*, 181 Wn.2d at 762.

"The key to whether a defense necessarily negates an element is whether the completed crime and the defense can coexist." *W.R.*, 181 Wn.2d at 765. For example in *State v. Box*, 109 Wn.2d 320, 330, 745 P.2d 23 (1987), our Supreme Court held that insanity does not negate the premeditation element of first degree murder. More recently in *W.R.*, 181 Wn.2d at 768, our Supreme Court held that consent necessarily negates forcible compulsion; therefore, due process prohibits shifting the burden to the defendant to prove consent by a preponderance of the evidence as a defense to a charge of rape by forcible compulsion.

Relying on *W.R.*, 181 Wn.2d at 765-66, Lozano argues that the affirmative defense instruction impermissibly shifted the burden of proof to him. Lozano appears to argue that because

---

[5] Our state constitution similarly guarantees, "No person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, § 3. Lozano has not argued that the trial court's "reasonable belief" jury instruction violated our state constitution.

he presented evidence at trial that A.B. consented to sexual intercourse, the allocation of any burden of proof to him violated his due process rights. We disagree.

*W.R.* does not support Lozano's position. The instruction in *W.R.* violated due process because it allocated to the defendant the burden to prove consent, which negated the forcible compulsion element of the charged crime. 181 Wn.2d at 768. Unlike in *W.R.*, Lozano's burden to prove his "reasonable belief" that the victim was not mentally incapacitated and physically helpless did not negate an element of the charged crime. Here, the State retained its burden to prove beyond a reasonable doubt that Lozano had sexual intercourse with A.B. when she could not consent by reason of being physically helpless or mentally incapacitated. The challenged instruction did not negate this element; *i.e.*, the instruction did not require Lozano to prove that the victim could actually consent. It merely placed the burden on Lozano to prove that he reasonably believed A.B. could consent, which is a statutory defense to the crime.

The "reasonable belief" defense may coexist with the charged crime because the elements of the crime are based on the inability of the person to consent, whereas the defense is concerned with the reasonableness of the defendant's belief that the person was able to consent. The "reasonable belief" defense is merely an excuse for conduct that would otherwise be punishable. Therefore, the trial court's instruction did not violate due process.

II.     INEFFECTIVE ASSISTANCE OF COUNSEL

Lozano next argues that his counsel was ineffective for failing to propose jury instructions outlining his affirmative defense of consent. We disagree. Consent is not an affirmative defense to the charge of rape in the second degree where, as here, the State solely charges the defendant of having sexual intercourse with a person incapable of consent by reason of being physically helpless or mentally incapacitated. Therefore, defense counsel's performance was not deficient.

Ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700. An attorney's performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Deficient performance prejudices a defendant if there is a "reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

"'Consent' means that at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact." RCW 9A.44.010(7). In *State v. Lough*, 70 Wn. App. 302, 329, 853 P.2d 920 (1993), *aff'd*, 125 Wn.2d 847, 889 P.2d 487 (1995), the court noted that a defendant's consent defense to second degree rape was "*legally* and *logically* superfluous" when the State's sole theory was that the victim was legally incapable of giving consent because the defendant had drugged the victim into unconsciousness. The court further stated that if the State proved its case beyond a reasonable doubt, consent is no defense at all. *Lough*, 70 Wn. App. at 329.

As discussed in *Lough*, if the State proves beyond a reasonable doubt that a person cannot consent to sexual intercourse, the victim's words or conduct indicating freely given agreement to

have sexual intercourse will not excuse the defendant's conduct.[6] 70 Wn. App. at 329. Therefore, a victim's words or conduct indicating freely given agreement are not an affirmative defense to a rape in the second degree charge where the State's information solely charges the defendant with rape in the second degree where the victim could not consent because of physical helplessness or mental incapacity. *See Fry*, 168 Wn.2d at 7 (explaining that "[a]n affirmative defense admits the defendant committed a criminal act but pleads an excuse for doing so").

Because consent is not an affirmative defense to rape in the second degree as charged here, Lozano's counsel's decision not to seek an instruction on consent was not deficient. Lozano has neither shown that his counsel's performance was deficient nor that it prejudiced Lozano's case. Therefore, Lozano's ineffective assistance claim fails. We affirm the conviction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## I.    ADDITIONAL FACTS

Lozano told his friend, Mohamed Young, about meeting A.B. Young also knew A.B., and he contacted her after speaking with Lozano. A.B. told Young what had happened with Lozano the night of February 7. When Young asked A.B. if she was going to report Lozano to law enforcement, she told Young that she was not planning on it and that she just wanted Lozano to stay away from her. A few weeks later, Young found out that Lozano had been arrested so he

---

[6] We are not saying that evidence of a victim's words or conduct that may indicate freely given agreement are not relevant at trial. Such evidence may support a defendant's theory that the victim could consent or that the defendant reasonably believed that the victim was not mentally incapacitated or physically helpless.

contacted A.B. to ask whether she had reported the incident. A.B. had not reported the incident to law enforcement, but she promptly did so after her conversation with Young.

Young made an oral statement to law enforcement in which he discussed his conversation with Lozano. Law enforcement recorded and transcribed Young's statement. Lozano attempted to admit a portion of Young's transcribed statement at trial after the State used a selection of the statement to refresh Young's memory while he testified. The trial court sustained the State's objection that the statement constituted inadmissible hearsay.

Lozano also sought to introduce photographs depicting C.C. and A.B. engaging in sexually suggestive poses and acts that were displayed on C.C.'s MySpace page[7] at the time she communicated with Lozano. The trial court excluded the photographs as irrelevant; the trial court further held that even if the photographs had slight probative value, it was substantially outweighed by the danger of unfair prejudice.

As part of the jury instructions at the close of evidence, the trial court instructed the jury that evidence of Lozano's prior arrest may be considered only for the purpose of what effect, if any, it had on A.B.

II.     EVIDENTIARY RULING – YOUNG'S STATEMENT

Lozano argues that the trial court erred by not allowing him to admit the entirety of Young's statement after the State introduced an allegedly misleading fragment of the statement during Young's testimony. Lozano asserts that the trial court's ruling violated ER 106, the common law rule of completeness, and his constitutional right to present a defense (including his right to confront adverse witnesses). We disagree.

---

[7] MySpace is a social networking website.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Griffin*, 173 Wn.2d 467, 473, 268 P.3d 924 (2012). "An abuse of discretion occurs if the court's decision is manifestly unreasonable or rests on untenable grounds." *Griffin*, 173 Wn.2d at 473. "However, a court 'necessarily abuses its discretion by denying a criminal defendant's constitutional rights.'" *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009) (quoting *State v. Perez*, 137 Wn. App. 97, 105, 151 P.3d 249 (2007)). "And we review de novo a claim of a denial of constitutional rights." *Iniguez*, 167 Wn.2d at 280.

The federal and state constitutions guarantee defendants the right to present a defense, including the right to introduce relevant evidence and to confront adverse witnesses through meaningful cross-examination. U.S. CONST. amend VI; WASH. CONST. art. 1, § 22; *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). But this right does not extend to presenting irrelevant or otherwise inadmissible evidence. *Jones*, 168 Wn.2d at 720; *State v. Maupin*, 128 Wn.2d 918, 924-25, 927, 913 P.2d 808 (1996); *State v. Rafay*, 168 Wn. App. 734, 800, 285 P.3d 83 (2012); *State v. Classen*, 143 Wn. App. 45, 60, 176 P.3d 582 (2008).

An out-of-court statement admitted for the truth of the matter asserted is hearsay, which is inadmissible unless an exception applies. ER 801(c); ER 802. The rules of evidence do not specifically prohibit the admission of self-serving statements; but, "self-serving" is a shorthand way of saying that the statement is hearsay and does not fit recognized exceptions to the hearsay rule. *State v. King*, 71 Wn.2d 573, 577, 429 P.2d 914 (1967); *State v. Pavlik*, 165 Wn. App. 645, 653-54, 268 P.3d 986 (2011). Therefore, a statement's admissibility must be addressed under the recognized exceptions to the hearsay rule. *Pavlik*, 165 Wn. App. at 654. An admission by a party-opponent is expressly excluded from the hearsay rule, but to qualify, the statement must be offered against a party and be the party's own statement. ER 801(d)(2).

ER 106 allows a party to supplement portions of a writing or recorded statement offered by an adverse party with other relevant portions as fairness requires. It provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it.

ER 106.

Here, it is important to clarify what evidence the trial court actually excluded. At trial, the State used *Young's* transcribed statement to refresh Young's recollection about whether Lozano told him that A.B. and C.C. were mad at him. After silently reviewing his own statement, Young testified from memory, affirming that Lozano told him that one of the girls said "Oh, my god. Get the hell off of me." I Report of Proceedings (RP) at 179. In response, Lozano's counsel attempted to have Young read into the record a portion of his own transcribed statement, including the sentence that the State had used to refresh his recollection. The State objected that Young's transcribed statement was self-serving hearsay because the offered portion of the statement was Young's recounting of what Lozano told him happened with A.B., *i.e.*, Lozano's version of the facts. Lozano's counsel argued that the statement was admissible under ER 106 and should be allowed out of fairness to complete the portion admitted earlier. The trial court sustained the State's objection.

Lozano's reliance on ER 106 to admit the remaining portion of Young's transcribed statement is not well taken because the State did not introduce any portion of the statement. It was not admitted into evidence, and Young did not read any part of it into the record. Further, there is nothing about the content of Young's transcribed statement that ought to in fairness be considered contemporaneously with his testimony on the same topic. For these reasons, ER 106 is inapplicable to Young's transcribed statement.

11

Moreover, Young's statement is hearsay. It does not qualify as an admission of a party-opponent because Young is not a party to this case. Lozano did not identify a hearsay exception for the proffered hearsay evidence. Because Lozano has not shown that the excluded evidence was admissible, we hold that the trial court did not err by excluding it. ER 802. Lozano also fails to show that exclusion of the evidence violated his constitutional right to a defense, which does not include the right to present inadmissible evidence. *See Jones*, 168 Wn.2d at 720.

III.    STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Lozano makes two assertions that we have already addressed, that the trial court denied him the right to confront and cross-examine Young by not admitting Young's statement, and that the trial court erred by instructing the jury on the "reasonable belief" defense. We, therefore, are not required to address these matters further. *See* RAP 10.10(a) (providing that the purpose of a SAG is to identify and discuss those matters which the defendant/appellant believes have not been adequately addressed by the brief filed by defendant/appellant's counsel). The remaining issues involve allegations of evidentiary error, ineffective assistance of counsel, and abuse of prosecutorial discretion.

A.    Evidence of Lozano's Prior Arrest

Lozano argues that the trial court erred by allowing the State to introduce evidence of his prior arrest and that his counsel was ineffective for failing to request a mistrial when the State violated the trial court's order limiting evidence of the arrest to the conversation between Young and A.B. We disagree.

1.    ER 404(b) Ruling

We review the decision to admit evidence of a defendant's prior bad acts for an abuse of discretion. *State v. Brown*, 132 Wn.2d 529, 571-72, 940 P.2d 546 (1997). The purpose of ER

404(b) is to exclude evidence that the defendant is a "criminal type" who is acting in accordance with that propensity. *Lough*, 125 Wn.2d at 853. ER 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible for a purpose other than to prove propensity. Lozano is correct that evidence of his prior arrest raises ER 404(b) concerns. *See State v. Acosta*, 123 Wn. App. 424, 433, 98 P.3d 503 (2004). The question is whether the trial court properly balanced the probative value of the evidence against its prejudicial impact.

Here, the State sought to introduce the content of a telephone conversation between Young and A.B., specifically the part of the conversation when Young advised A.B. that Lozano had been arrested for rape. The prior allegation of rape against Lozano was important to the State's case because it was the impetus for A.B. reporting the February 7 incident after a three-week delay. The trial court denied the State's motion to use the prior allegation of rape in its case in chief, ruling that the prejudicial effect of the prior rape allegation outweighed the probative value. However, the trial court allowed the State to introduce evidence that Lozano had been arrested as long as the State did not elicit that the arrest was for suspicion of rape. In addition, the trial court instructed the jury that Young's statement to A.B. that Lozano had been arrested may only be considered for the limited purpose of what effect, if any, this evidence had on A.B.

Given the significance of the evidence, the trial court had a tenable basis for concluding that the probative value of that information outweighed any prejudicial impact the prior arrest might have had. Accordingly, the trial court properly exercised its discretion.

### 2. Counsel's Failure to Request a Mistrial

Next, Lozano asserts that his counsel was ineffective for failing to request a mistrial when the State's law enforcement witness testified that she was assigned to Lozano's case because she previously investigated him. This testimony violated the trial court's ruling that evidence of

Lozano's prior arrest was admissible only in the context of Young and A.B.'s conversation and only for the purpose of its effect on A.B. Lozano's counsel successfully objected and the trial court instructed the jury to disregard it. Lozano now contends that these actions were insufficient and that his counsel was constitutionally ineffective for not demanding a mistrial. We disagree.

As discussed above, a defendant claiming ineffective assistance of counsel has the burden to establish deficiency and prejudice. *Thomas*, 109 Wn.2d at 225-26. To prevail on his claim that he received ineffective assistance of counsel because defense counsel failed to request a mistrial, Lozano must show that had defense counsel requested a mistrial, the outcome would have been different, i.e., that the trial court would have granted the motion for a mistrial. *Thomas*, 109 Wn.2d at 226.

"A trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant receives a fair trial." *State v. Jungers*, 125 Wn. App. 895, 901-02, 106 P.3d 827 (2005). Declaration of a mistrial is a "drastic measure," and there are other options a trial court may choose to exercise based on the individual situation. *State v. Falk*, 17 Wn. App. 905, 908, 567 P.2d 235 (1977). For example, a continuance or curative instruction may be preferred to mistrial. *See State v. Linden*, 89 Wn. App. 184, 195, 947 P.2d 1284 (1997); *State v. Johnson*, 124 Wn.2d 57, 76-77, 873 P.2d 514 (1994). In deciding whether a trial irregularity should result in a mistrial, courts examine (1) its seriousness, (2) whether it involved cumulative evidence, and (3) whether an instruction could cure the irregularity. *State v. Bourgeois*, 133 Wn.2d 389, 409, 945 P.2d 1120 (1997).

We are not convinced that the trial court would have granted a mistrial had Lozano's counsel moved for one. Because the fact of Lozano's prior arrest was admissible and Young and A.B. both referenced the prior arrest in their testimony, the law enforcement officer's brief

14

reference to having conducted a previous investigation involving Lozano was cumulative information. Given the context, the irregular testimony was not so serious that it could not be cured by the court's instruction to disregard the testimony. In addition, the trial court emphasized to the jury the limited purpose of the prior arrest evidence by giving a limiting instruction at the close of the case. Because Lozano does not establish that the outcome of his trial would have been different if his counsel had requested a mistrial, we hold that Lozano failed to show prejudice resulting from his counsel's failure to move for a mistrial. This is fatal to his ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

B.      Exclusion of MySpace Photographs

Lozano next asserts that the trial court erred in excluding sexually suggestive photographs which he viewed on MySpace depicting C.C. and A.B. partying on occasions unrelated to the February 7 crime for which he was convicted. We disagree.

We review a trial court's evidentiary decision under the rules of evidence for an abuse of discretion. *Griffin*, 173 Wn.2d at 473. "An abuse of discretion occurs if the court's decision is manifestly unreasonable or rests on untenable grounds." *Griffin*, 173 Wn.2d at 473. The trial court conducted an exhaustive and comprehensive analysis on the admissibility of the photographs. The trial court concluded that the photographs were irrelevant to the issues at trial because there are no factual similarities between the incident on February 7 and the situations depicted in the photographs; the photographs did not shed light on whether A.B. was physically and mentally capable of consenting to sexual intercourse on the night in question; and, the photographs did not make it more or less likely that Lozano reasonably believed that A.B. could consent. Next, the trial court ruled that even if the photographs were minimally relevant, the photographs should be excluded under ER 403 because the danger of unfair prejudice substantially outweighed its

15

probative value. Specifically, the trial court was concerned that the jury would focus on the depictions of A.B. apparently engaging in questionable activities and would put her on trial rather than Lozano. Finally, the trial court concluded that admitting the photographs would violate the rape shield statute, RCW 9A.44.020.

On appeal Lozano argues that the photographs show that C.C. lied about only having seen A.B. drunk a few times. He also argues that excluding the photographs was unfair because it deprived him of the ability to show "who these women really are." SAG at 3.

Lozano's first argument—that the photographs were relevant to show that C.C. lied about A.B.'s drinking habits—was not brought to the trial court's attention, and therefore it cannot be used to undermine the trial court's ruling on appeal. *See State v. Greiff*, 141 Wn.2d 910, 924, 10 P.3d 390 (2000). Lozano's second argument—that excluding the photographs was unfair because it deprived him of an opportunity to show "who these women really are"—is not persuasive. A.B.'s and C.C.'s character (other than for truthfulness as witnesses) were not issues at trial. *See State v. Hudlow*, 99 Wn.2d 1, 10-11, 659 P.2d 514 (1983) (a person's consent to sexual activity in the past, without more, such as particularized factual similarities to the present occasion, does not meet the bare relevancy test). The scenes depicted in photographs are not similar to the facts of this case. Because the trial court had a tenable basis for concluding that photographs were not relevant to any issues at trial and that the danger of unfair prejudice to the State's case substantially outweighed any minimal relevance of the photographs, the trial court did not abuse its discretion in excluding the photographs.

C. Exclusion of Expert Testimony

Next, Lozano argues that the trial court erred by excluding his expert's testimony on confabulation. Lozano is mistaken about the trial court's ruling. The prosecutor and defense

counsel initially disagreed on the admissibility of the expert's planned testimony, but much of the disagreement was resolved without the trial court's involvement. The only issue the trial court was asked to rule on was whether the expert could testify generally about confabulation. The trial court ruled in favor of Lozano, allowing the expert's testimony on confabulation. Contrary to Lozano's claim, the trial court did not exclude any portion of his expert's testimony. Accordingly, Lozano's claim fails.

### D. Overcharging

Next, Lozano argues that the prosecutor abused its discretion by overcharging him. We disagree.

Prosecutors have discretion in their charging decisions. *State v. Korum*, 157 Wn.2d 614, 625, 141 P.3d 13 (2006). We may not substitute our judgment for the prosecutor's. *Korum*, 157 Wn.2d at 625-26.

Specifically, Lozano argues that he should have been charged with indecent liberties rather than rape in the second degree because the crimes are similarly worded. Lozano is likely referring to a charge of indecent liberties under RCW 9A.44.100(1)(b). Although the indecent liberties and rape in the second degree statutes are similarly worded, there are important differences. For example, a person charged under the indecent liberties statute must have engaged in "sexual contact," whereas a person charged under the rape in the second degree statute must have engaged in "sexual intercourse." RCW 9A.44.100(1); RCW 9A.44.050(1). "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). "Sexual intercourse . . . has its ordinary meaning and occurs upon any penetration, however slight." RCW 9A.44.010(1)(a).

The evidence showed that Lozano had sexual intercourse with A.B. Therefore, the prosecutor was able to charge Lozano with the more serious crime of rape in the second degree. The State's offer to accept a guilty plea for indecent liberties does not change the fact that rape in the second degree was an appropriate charge. Lozano's claim of abuse of prosecutorial discretion is without merit.

We affirm.

Melnick, J.

We concur:

Worswick, J.

Johanson, C.J.