# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58776-9-II<br>(consolidated with No. 60046-3-II) |
| Respondent, | |
| v. | |
| DAVID ALEKSANDROVICH BEJAN, | UNPUBLISHED OPINION |
| Appellant. | |
| In the Matter of the Personal Restraint of: | |
| DAVID BEJAN, | |
| Petitioner. | |

CRUSER, C.J.—This case involves a direct appeal and a consolidated personal restraint petition, RAP 16.4, in which David Aleksandrovich Bejan seeks reversal of his convictions for four counts of child molestation. In his direct appeal, Bejan argues the trial court abused its discretion by excluding (1) MP's previous report of sexual abuse by her father and (2) her out-of-court statements of anxiety over the birth of her brother. Bejan claims the exclusion of this evidence violated his right to present a defense. In a statement of additional grounds for review, RAP 10.10, Bejan also argues there was insufficient evidence to support his convictions because the evidence did not establish that he touched MP for sexual gratification. In his personal restraint

petition, Bejan claims that he received ineffective assistance of counsel based on his trial counsel's decision not to call several potential witnesses.

We conclude that the trial court did not abuse its discretion by excluding MP's prior report of sexual abuse by her father or her out-of-court statements of anxiety about the birth of her brother, because neither the prior report nor the out-of-court statements are relevant. We also conclude that neither exclusion violated Bejan's right to present a defense. We conclude that there was sufficient evidence to support Bejan's convictions because the evidence supported an inference that Bejan touched MP for sexual gratification. Lastly, we conclude that Bejan did not receive ineffective assistance of counsel because his counsel's decision not to call additional witnesses was a reasonable trial tactic. Accordingly, we affirm Bejan's convictions and deny his personal restraint petition.

FACTS

A. BACKGROUND

David Bejan had sexual contact with MP, his niece, on several[1] occasions when she was under the age of twelve. The incidents occurred when Bejan and his wife Rebecca[2] were caring for MP while her mother was at work. MP would spend most days of the week at the Bejans' house for extended periods of time. She would also occasionally stay overnight.

---

[1] The trial court did not clarify the basis for each of Bejan's convictions. The court found that Bejan had sexual contact with MP on five occasions, but he was only convicted for four counts. As a result, throughout this opinion we refer to his various/several incidents of contact rather than a distinct number.

[2] We refer to Rebecca by her first name because she and the appellant share a surname.

The first incident occurred when "[MP] was taking a nap and [Bejan] laid down in bed with her, pulled her towards him, touched her buttocks, and tried to touch her vagina." Clerk's Papers 86. In the second incident, MP was taking another nap on Bejan's bed in his bedroom. Bejan entered the room, "put [MP's] hand on his penis, closed her hand around it, and moved her hand up and down." *Id.* On the third incident, MP was awakened from a nap on the couch in a different position than she had gone to sleep in. She was on top of Bejan, with his penis close to her vagina, and he was moving his body up and down. In the fourth incident, MP was awakened by Bejan grabbing her buttocks, and then Bejan "touching her butt crack with his penis." *Id.* at 87. In the fifth incident, MP awakened to Bejan rubbing his finger in her mouth on her teeth. This was followed by MP's observation of the bed shaking due to the movement of Bejan's hands around the lower part of his body.

Rebecca began to suspect that Bejan was sexually abusing MP. On or about April 26, 2021, Rebecca asked MP if Bejan had done anything inappropriate. MP disclosed to Rebecca that Bejan had been sexually touching her. Rebecca informed her brother, MP's father, about this disclosure. MP's father informed, MP's mother, who reported the abuse. MP began counseling in December 2021. She was diagnosed with posttraumatic stress disorder (PTSD).

The State charged Bejan with four counts of child molestation in the first degree. In these charges, the State included an aggravating circumstance based on Bejan's use of his position of trust, confidence, or fiduciary responsibility to facilitate the crimes charged. The matter proceeded to a bench trial.

B. TRIAL

Prior to trial, Bejan submitted a motion to admit evidence of MP's report of a prior sexual assault by her father as relevant evidence supporting Bejan's theory that MP fabricated her allegations against him. Bejan contended that as stated in *State v. Peterson*, 35 Wn. App. 481, 667 P.2d 645 (1983), a defendant can lay a foundation for their contention that a prior report of abuse was fabricated by offering proof that the prior reports of sexual abuse were untrue or by arguing that the reports are so similar to one another that they must be fabricated. In the report, then-three-year-old MP stated that her father had either put his penis on or in her vagina. MP's report consisted of conflicting accounts of the type of sexual abuse, how many times it occurred, and if it occurred at all. Bejan argued that MP's prior report was likely false because the State declined to file charges. Bejan also argued that the reports were strikingly similar because both involved allegations of sexual abuse where MP alleged that her family member touched her vagina.

The trial court determined that the report was not relevant because Bejan had not demonstrated that MP fabricated the prior report of abuse. The trial court could not see any evidence from the report that MP consciously fabricated the event. And the trial court found the events in this case were not so strikingly similar to the previous incident that MP was probably fabricating it. To the contrary, the trial court found that the reports "describe very different types of events." Verbatim Rep. of Proc. at 52. Based on these findings, the trial court denied Bejan's motion to admit evidence of the prior report as it was irrelevant.

At trial, MP testified consistently with the facts set forth above. MP's mother testified that the Bejans watched MP while she worked during the time period of the charges. Regarding MP's emotional state, she testified that MP's behavior changed during the time frame of the incidents

4

and that MP asked to no longer stay with the Bejans and became easily upset. MP's mother further testified that she was informed of and reported the incidents three weeks after the birth of her son on April 5, 2021, and that the report occurred two weeks since MP had last been at the Bejans' house.

Rebecca testified that during the time period she and Bejan were taking care of MP, they were dealing with marital strife. Rebecca testified that, because she was furious with her husband, she prompted MP with questions that would influence MP to adopt Rebecca's narrative that Bejan sexually abused MP.

Alissa Schober, MP's therapist, testified that she began seeing MP in July 2021. Schober testified that at the commencement of their work together, MP became tearful and reported anxiety and feeling overwhelmed. Based on these observations, Schober diagnosed MP with PTSD. Schober testified this diagnosis is given when an individual has experienced a threat to the integrity and safety of their body, whether that is because of death, sexual abuse, or physical abuse. The disorder presents itself through a list of symptoms including hypervigilance, avoidance, and nightmares, all of which impact relationships and one's ability to function in life. Schober testified MP met these characteristics based on what she reported. Throughout their sessions, Schober testified that MP continued to display anxiety consistent with this diagnosis, as she felt she had upset her family system with the report. Schober testified that other factors could contribute to PTSD and the other ailments MP experienced.

Rebecca also testified on behalf of Bejan. Bejan asked Rebecca if MP ever looked depressed, stressed, or upset to her. In responding to this question, Rebecca attempted to introduce statements made by MP. In response to the State's hearsay objection, Bejan stated that the

5

statements he sought to admit were MP's expression of anxiety over possibly not having the "affection that she desired" when her new baby brother was born, and argued that these statements were admissible because of the effect they had on the listener (Rebecca). *Id.* at 286. Following an offer of proof in which Bejan was unable to demonstrate why Rebecca's actions in response to MP's statements were relevant, Bejan asked the court to admit MP's statements to corroborate Schober 's testimony and show that MP was "troubled." *Id.* at 290. The trial court concluded that these statements were not admissible under the state of mind exception to the hearsay rule and sustained the State's objection.

Rebecca, as well as Adina Adler, Josiah Adler, Eduard Fesyuk, and Bejan, provided additional testimony that MP was comfortable around Bejan based on their perception of one event in which she asked to ride in the car with Bejan, and various instances of desiring his attention.

The trial court found Bejan guilty of four counts of child molestation in the first degree, and that Bejan abused his position of trust or confidence in committing the crimes. Bejan appeals.

## DISCUSSION

### I. ADMISSIBILITY OF PRIOR ALLEGATIONS

Bejan argues the trial court abused its discretion when it excluded evidence of MP's prior report of sexual abuse by her father. He argues the evidence was relevant to establish MP's motive to lie about the claims against him in an attempt to garner attention similar to what she received after the previous report against her father. The State responds that the trial court properly excluded the prior report as irrelevant because Bejan failed to lay a foundation that MP had fabricated any claims in the previous report. We agree with the State.

6

A. LEGAL PRINCIPLES

For the review of an evidentiary decision, we must determine what evidentiary rules apply and then determine whether the trial judge acted within the discretion accorded by those rules. *State v. Gunderson*, 181 Wn.2d 916, 921-22, 337 P.3d 1090 (2014). Evidentiary rulings are reviewed for an abuse of discretion. *State v. Clark*, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). We will defer to those rulings unless " 'no reasonable person would take the view adopted by the trial court.' " *Id.* (internal quotation marks omitted) (quoting *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)).

Relevant evidence is admissible and irrelevant evidence is inadmissible. ER 402. "The proponent of the evidence bears the burden of establishing its relevance." *State v. Bass*, 18 Wn. App. 2d 760, 799, 491 P.3d 988 (2021). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. A trial court maintains discretion concerning the relevancy of evidence to determine admissibility. *State v. Whalon*, 1 Wn. App. 785, 791, 464 P.2d 730 (1970).

When a party cannot lay the proper foundation, evidence of prior sexual abuse perpetrated against the victim is not relevant to a defense of fabrication. *Peterson*, 35 Wn. App. at 484-85. The proper foundation to support such a claim would demonstrate that the prior report of sexual abuse was untrue or that the current incident at charge is so similar to the previous incident the victim was probably fabricating it. *Id.* at 484.

B. APPLICATION

Bejan argues the trial court abused its discretion by excluding evidence of MP's prior report of sexual abuse by her father. We disagree. The trial court did not abuse its discretion because Bejan failed to lay the necessary foundation of relevancy establishing the prior report was untrue or that the current incident was so similar to the previous incident that MP was probably fabricating.

The prior report of sexual abuse is not relevant because Bejan failed to establish it was untrue. While Bejan contends that three-year-old MP must have fabricated her report because the report was inconsistent, MP's report was consistent with the expected confusion and apprehension for a child of that age under the circumstances. The mere fact the report did not progress into charges against MP's father is insufficient to prove the report was untrue. Therefore, Bejan failed to establish the prior report was relevant based on the theory it was untrue.

Additionally, the prior report is not relevant because Bejan failed to establish that the incidents were so similar that MP was probably fabricating them. The previous report consisted of claims MP's father had either put his penis on or in her vagina. In the current case, Bejan's charges were based on different events wherein Bejan sexually touched MP. This included rubbing MP's buttocks with his hand, attempting to put his finger inside her underwear, placing her hand on his penis and moving it up and down, placing her on top of him while laying down and moving his lower body up and down beneath her, placing his penis on her buttocks, and rubbing his finger on her teeth and gums. The events were therefore significantly different, and cannot support the claim the report was relevant evidence that MP fabricated her allegations. As Bejan failed to show MP's

prior report was untrue or so similar to the issue at hand she was likely fabricating it, the evidence was not relevant, and the trial court did not abuse its discretion by excluding the report.

## II. EXCLUSION OF HEARSAY

Bejan argues the trial court abused its discretion when it excluded MP's out-of-court statements of anxiety over the birth of her brother. Bejan argues the statements fit the state of mind exception because they relate to MP's fear of losing her mother's attention at the time the statements were made. Bejan contends that the excluded statements were relevant evidence that MP was "open and receptive to Rebecca encouraging her to [falsely] accuse [Bejan]." Br. of Appellant at 58. Further, Bejan argues the statements were relevant as they provide an alternative explanation for MP's PTSD diagnosis.

The State argues that the trial court did not abuse its discretion, as Bejan failed to establish any " 'then-existing' " state of mind of MP that was at issue. Br. of Resp't at 23. The State contends that at trial, defense counsel only argued the state of mind exception based on the alternative explanation point, and is impermissibly attempting to add the "motive to fabricate" argument for the first time on appeal. The State contends that even if we address both arguments, there is nothing in the record to support the claim that MP's statements made weeks before her report were relevant evidence of her state of mind when she reported the assault or when she spoke with her therapist. We agree with the State.

A. LEGAL PRINCIPLES

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible except as provided by the rules of evidence, by statute, or by other court rules. ER

802. The rules of evidence provide that hearsay statements communicating the declarant's "[t]hen [e]xisting [m]ental, [e]motional, or [p]hysical [c]ondition" may be admissible. ER 803(a)(3) (italics omitted). This exception allows for the admission of statements "of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." ER 803(a)(3). If the declarant's state of mind is not relevant to any material issue, and instead only bears a remote or artificial relationship to the legal or factual issues actually raised, it will be inadmissible. *State v. Parr*, 93 Wn.2d 95, 98-104, 606 P.2d 263 (1980). We review a trial court's decision to exclude hearsay statements for abuse of discretion. *See Clark*, 187 Wn.2d at 648.

B. APPLICATION

Bejan argues that the trial court abused its discretion by excluding MP's out-of-court statements concerning her fears over the birth of her new brother because they fall within the state of mind exception to the hearsay rule, are relevant evidence of MP's motive to fabricate her allegations, and provide an alternative explanation for her PTSD diagnosis. We disagree, and conclude there was no abuse of discretion.

Initially, we start with the fact that a party cannot change theories of admissibility on appeal. *State v. Pavlik*, 165 Wn. App. 645, 651, 268 P.3d 986 (2011). Bejan's argument the statements concerned the state of mind of MP by showcasing a motive to falsify the allegations to receive attention is an impermissible change in theory of admissibility on appeal. *Id.* The record shows that at trial, Bejan's argument of admissibility for MP's statements was solely based on the possibility this fear about a new brother was the cause of or a contributing factor to MP's PTSD diagnosis. Therefore, we will not consider Bejan's argument that the trial court abused its

discretion by excluding the statements on the point they showed MP's motive to make a false claim.

Further, assuming without deciding the statements fit the state of mind exception on the basis of providing an alternative explanation for MP's PTSD diagnosis, it was not an abuse of discretion for the trial court to exclude the statements as they are not relevant. Even if it is true that MP was anxious about the birth of her brother at the time she made her statements to Rebecca, her PTSD diagnosis occurred months after her brother was born. It is unreasonable to assume that MP's anxiety regarding the birth of her brother persisted at the time of her diagnosis. MP's statements prior to the birth of her brother only bear a remote or artificial relationship to her mental state at the time of her diagnosis. Therefore, they are not relevant to Bejan's theory that MP's anxiety about the birth of her brother provided an alternative explanation for her PTSD diagnosis. Thus, it was not an abuse of discretion for the court to exclude these statements as they are irrelevant.

## III. RIGHT TO PRESENT A DEFENSE

Having concluded that the trial court did not abuse its discretion in making the challenged evidentiary rulings, we next consider Bejan's claim that his constitutional right to present a defense was violated. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022). Bejan argues the trial court's decision to exclude the prior report and MP's statements of anxiety over the birth of her brother violated his Sixth Amendment right to present a defense as both pieces of evidence were relevant to prove motive or to offer an alternative explanation for MP's PTSD diagnosis. The State argues that the trial court properly determined that both pieces of evidence were irrelevant and

inadmissible, and thus Bejan had no constitutional right to present the evidence. We agree with the State.

A. LEGAL PRINCIPLES

Criminal defendants have a constitutional right to present a defense. U.S. Const. amend. VI; Wash. Const. art. I, §§ 3, 22. However, a defendant's right to present a defense is not absolute. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). There is no constitutional right to present irrelevant evidence. *Id*.

If the evidence is at least minimally relevant we "must weigh the defendant's right to produce relevant evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights." *Jennings*, 199 Wn.2d at 63. Where the excluded evidence has at least minimal relevance, reviewing courts consider whether "the defendant had the opportunity to present [their] version of the incident, even if some evidence was excluded." *Id.* at 66. If the excluded evidence would have bolstered the defendant's argument, but was not essential to the argument, the defendant's right to present a defense may be outweighed by the State's interest in avoiding prejudice. *Id.* at 67. We review de novo whether the exclusion of evidence violated the defendant's constitutional right to present a defense. *Id.* at 58.

B. APPLICATION

Neither the exclusion of the prior report nor MP's out-of-court statements regarding her anxiety over the birth of her new brother violated Bejan's right to present a defense. As discussed above, the excluded evidence is not relevant. The prior report is not relevant because Bejan failed to establish the foundational requirement that MP fabricated her prior report. With regard to MP's

hearsay statements, Bejan did not preserve his argument that MP's statements were relevant to her willingness to fabricate the allegations with Rebecca's encouragement. And MP's out-of-court statements were not relevant to MP's PTSD diagnosis because they occurred months prior to her diagnosis, and concerned an event that had already passed by the time of her diagnosis. As a defendant has no right to present irrelevant or inadmissible evidence, Bejan's Sixth Amendment right to present a defense was not violated. *State v. Jones*, 168 Wn.2d at 720; *State v. Aguirre*, 168 Wn.2d 350, 363, 229 P.3d 669 (2010).

And even if we were to conclude that the excluded evidence was minimally relevant, the excluded evidence was not essential to Bejan's argument. Bejan sought to admit the prior report as evidence that MP fabricated her allegations against Bejan. Bejan elicited testimony from Rebecca that she induced MP to fabricate her story of abuse. Rebecca's testimony provided an explanation for why MP allegedly fabricated her allegations, even in the absence of MPs hearsay statements regarding the birth of her brother. And Bejan was able to undermine the significance of MP's PTSD diagnosis, without MP's hearsay statements, by eliciting testimony that MP's reported anxiety could have been caused by other factors. Because the excluded evidence was not essential to Bejan's argument, the defendant's right to present a defense is outweighed by the State's interest in avoiding prejudice. Therefore, even assuming that the excluded evidence was minimally relevant, exclusion of the evidence did not violate Bejan's right to present a defense.

## IV. SUFFICIENCY OF THE EVIDENCE

In a statement of additional grounds (SAG), Bejan argues that the evidence submitted at trial was insufficient to support an inference that he touched MP for his sexual gratification. We disagree.

13

A. LEGAL PRINCIPLES

On review of the sufficiency of the evidence to support a criminal conviction, this court, after viewing the evidence in the light most favorable to the prosecution, must determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). All reasonable inferences from the evidence must be drawn in favor of the State. *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024). Circumstantial evidence can be sufficient to uphold a verdict. *Id*. This standard of review is " 'highly deferential to the [trier of fact's] decision, and we do not consider questions of credibility, persuasiveness, and conflicting testimony.' " *Id.* (internal quotation marks omitted) (quoting *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (plurality opinion)).

A person is guilty of the crime of first degree child molestation if: (1) the perpetrator has sexual contact, (2) with a victim who is less than 12 years old, and (3) the perpetrator is at least 36 months older than the victim. RCW 9A.44.083.[3] The definition of "sexual contact" clarifies that inadvertent touching or contact is not part of the crime. *State v. Lorenz*, 152 Wn.2d 22, 34, 93 P.3d 133 (2004). Sexual gratification is not an essential element of this crime, but a definition that clarifies the meaning of the essential element of "sexual contact." *Id.* at 34-35. Cases in which the evidence shows touching through clothing, or touching of intimate parts of the body other than the primary erogenous areas, require some additional evidence of sexual gratification. *State v. Price*, 127 Wn. App. 193, 202, 110 P.3d 1171 (2005), aff'd, 158 Wn.2d 630, 146 P.3d 1183 (2006).

---

[3] RCW 9A.44.083 was amended in 2021. Because this amendment does not impact our analysis, we cite to the current version. LAWS OF 2021, ch. 142, § 5.

Similarly, " '[p]roof that an unrelated adult with no caretaking function has touched the [unclothed] intimate parts of a child supports the inference the touch was for the purpose of sexual gratification,' " although some additional evidence is required. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (quoting *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991)). When an individual touches a victim's upper thigh or groin area in a back and forth manner, for no caretaking purpose, at night while the victim sleeps, in a room where everyone else appeared to be asleep, this Court has found the touching was done for sexual gratification. *State v. Kalebaugh*, No. 43218-8-II, slip op. (unpublished portion) at 11 (Wash. Ct. App. Feb. 11, 2014), https://www.courts.wa.gov/opinions/pdf/D2%2043218-8-II%20%20Part-Published%20Opinion.pdf, aff'd, 183 Wn.2d 578, 355 P.3d 253 (2015).

B. APPLICATION

Bejan argues there was insufficient evidence to support his convictions because the evidence did not support an inference that he touched MP for the purpose of sexual gratification for the element of sexual contact. We disagree.

The evidence supported the inference that Bejan touched MP for his sexual gratification. MP testified that Bejan touched her clothed and unclothed intimate areas on numerous occasions. This touching included the grabbing of MP's buttocks, simulating masturbation with MP's hand, forced rubbing of MP's body against Bejan's, rubbing of Bejan's penis against MP's buttocks, and rubbing of MP's teeth and gums. Each of these events occurred when MP was asleep, in private, and for no specific caretaking purpose. Further, Bejan's rubbing of MP's teeth and gums was followed by apparent masturbation by Bejan. Therefore, taken in the light most favorable to the State, a rational trier of fact could have inferred that Bejan touched MP to gratify a sexual desire

to satisfy the element of sexual contact. Thus, we hold that sufficient evidence supports his convictions.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In a personal restraint petition, Bejan contends he received ineffective assistance of counsel. This is so, he claims, because his trial counsel did not call four witnesses to testify that Bejan believes would have benefitted his case. Specifically, Bejan claims the witnesses would have testified about MP's apparent comfortability around Bejan, and there is a reasonable probability the court would have acquitted Bejan had it heard this testimony. In support of Bejan's petition, Rebecca submitted a declaration that set forth what she believed the witnesses would have testified to. Bejan did not submit affidavits or declarations from the purported witnesses themselves.

The State asks us to dismiss Bejan's personal restraint petition (PRP) because it lacks evidentiary support. The State argues that Rebecca's declaration is not a substitute for declarations from the purported witnesses, and that "Bejan puts forth no evidence" showing that counsel performed deficiently by not calling these witnesses. Br. of Resp't at 46-47. We agree with the State.

### A. LEGAL PRINCIPLES

We have three options when reviewing a personal restraint petition. We may: "(1) dismiss the petition, (2) transfer the petition to a superior court for a full determination on the merits or a reference hearing, or (3) grant the petition." *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). To prevail in a PRP, a petitioner must establish (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature

16

that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018).

The petitioner must show that he has competent, admissible evidence to establish facts that would entitle him to relief. *Yates*, 177 Wn.2d at 18. Bald assertions and conclusory allegations are insufficient. *Id*. And the factual allegations must be based on more than speculation and conjecture. *Id*. A declaration from the petitioner can support a PRP if the declaration is based on personal knowledge. *See In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 481, 965 P.2d 593 (1998); *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). And if the evidence supporting a claim is based on knowledge in the possession of others, the petitioner must present their affidavits with admissible statements or other corroborative evidence. *Rice*, 118 Wn.2d at 886.

A personal restraint petitioner alleging ineffective assistance of counsel meets the burden of showing actual and substantial prejudice if the petitioner shows both deficient performance and that there is a reasonable probability the result of the trial would have been different absent the errors of counsel. *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 688, 363 P.3d 577 (2015). Just as in a direct appeal, if a defendant fails to show either prong of the ineffective assistance of counsel test, our inquiry need go no further. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004)

An attorney's decision whether to call a witness to testify will generally not support a claim of ineffective assistance of counsel. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 492, 251 P.3d 884 (2010). The decision is generally a matter of legitimate trial tactics. *Id.*

B. APPLICATION

Bejan argues his counsel was deficient in failing to call four additional witnesses, who, he claims, all would have testified to MP's comfortability around him. But Bejan provides no evidentiary support for this claim. We cannot determine whether counsel performed deficiently in declining to call these witnesses because these alleged witnesses did not provide declarations advising us what testimony they would have provided. As a result, Bejan's petition is necessarily frivolous and must be dismissed.[4]

CONCLUSION

We conclude the trial court did not abuse its discretion by excluding the prior report of sexual abuse or MP's out-of-court statements concerning the birth of her brother, nor did the exclusion of this evidence violate Bejan's constitutional right to present a defense. Additionally, we conclude that sufficient evidence supported the trial court's finding that Bejan touched MP for his sexual gratification. We affirm Bejan's convictions. Finally, we dismiss Bejan's personal restraint petition because it lacks evidentiary support.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[4] Rebecca's declaration about what she believes these witnesses would have said is not competent evidence as it lacks foundation and is based on inadmissible hearsay. *See In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015); *see also Rice*, 118 Wn.2d at 886.

CRUSER, C.J.

We concur:

GLASGOW, J.

PRICE, J.